Case 1:99-cv-00793-PAC-RLE   Document

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: April 07, 2013

09-4414-cv
Fezzani v. Bear, Stearns & Co.

N.Y.S.D. Case #
99-cv-0793(PAC)

```
                    UNITED STATES COURT OF APPEALS

                         FOR THE SECOND CIRCUIT

                            August Term, 2010


            (Argued: April 6, 2011      Decided: May 7, 2013)

                          Docket No. 09-4414-cv

   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

   MOHAMMED FEZZANI, CIRENACA FOUNDATION, DR. VICTORIA BLANK, LESTER
   BLANK, JAMES BAILEY, JANE BAILEY, BAYDEL LTD., MARGARET BURGESS,
   PATRICK BURGESS, BOOTLESVILLE TRUST, and ADAM CUNG,
              Plaintiffs-Appellants,



                    v.

   BEAR, STEARNS & CO. INC., BEAR STEARNS SECURITIES CORP., RICHARD
   HARRITON, MORRIS WOLFSON, ARIELLE WOLFSON, ABRAHAM WOLFSON, TOVIE
   WOLFSON, ANDERER ASSOCIATES, BOSTON PARTNERS, WOLFSON EQUITIES,
   TURNER SCHARER, CHAN SASHA FOUNDATION, UNITED CONGREGATION
   MESERAH, ISAAC DWECK, Individually and as Custodian for NATHAN
   DWECK, BARBARA DWECK, MORRIS I. DWECK, RALPH I. DWECK, JACK
   DWECK, FAHNESTOCK & CO. INC., BARRY GESSER, MICHAEL REITER, and
   APOLLO EQUITIES,
              Defendants-Appellees,

   ARTHUR BRESSMAN, ANDREW BRESSMAN, RICHARD ACOSTA, GLENN O'HARE,
   JOSEPH SCANNI, BRETT HIRSCH, GARVEY FOX, MATTHEW HIRSCH, RICHARD
   SIMONE, CHARLES PLAIA, JOHN MCANDRIS, JACK WOLYNEZ, ROBERT
   GILBERT, FIRST HANOVER SECURITIES, INC., BANQUE AUDI SUISSE
   GENEVE, FOZIE FARKASH, RAWAI RAES, BASIL SHIBLAQ, IYAD SHIBLAQ,
   KEN STOKES, MILLO DWECK, BEATRICE DWECK, RICHARD DWECK, ISAAC B.
   DWECK, HANK DWECK, and DONALD & CO.,
              Defendants.*

   - - - - - - - - - - - - - - - - -- - - - - - - - - - - - - - -


   B e f o r e:   WINTER, CABRANES, and LOHIER, Circuit Judges.
```

---

*The Clerk of Court is directed to amend the caption to read as shown above.

CERTIFIED COPY ISSUED ON 05/07/2013

Appeal from a dismissal by the United States District Court for the Southern District of New York (Paul A. Crotty, Judge), of a complaint alleging securities manipulation in violation of Section 10(b). We affirm in part and vacate and remand in part by opinion with respect to one group of defendants. We affirm in part and vacate and remand in part by summary order with respect to remaining defendants.

Judge Lohier concurs in part and dissents in part in a separate opinion.

> MAX FOLKENFLIK, Folkenflik & McGerity, New York, New York, for Plaintiffs-Appellants.
>
> KERRY A. DZIUBEK (Michael D. Schissel & Jonathan N. Francis, on the brief), Arnold & Porter LLP, New York, New York, for Defendants-Appellees Bear, Stearns & Co. Inc. and Bear Stearns Securities Corp.
>
> HOWARD WILSON (John H. Snyder, on the brief), Proskauer Rose LLP, New York, New York, for Defendant-Appellee Richard Harriton.
>
> DONALD A. CORBETT (Ira Lee Sorkin & Daniel K. Roque, on the brief), Lowenstein Sandler PC, New York, New York, for Defendants-Appellees Morris Wolfson, Arielle Wolfson, Aaron Wolfson, Abraham Wolfson, Tovie Wolfson, Anderer Associates, Boston Partners, Wolfson Equities, Turner Scharer, Chan Sasha Foundation, and United Congregation Meserah.

```
                               DONALD N. COHEN (Timothy E. Di Domenico,
                               on the brief), Greenberg Traurig, LLP,
                               New York, New York, for Defendants-
                               Appellees Isaac R. Dweck, Individually
                               and as Custodian for Nathan Dweck,
                               Barbara Dweck, Morris I. Dweck, Ralph I.
                               Dweck, and Jack Dweck.

                               THOMAS J. QUIGLEY (Christopher J.
                               Paolella, on the brief), Winston &
                               Strawn LLP, New York, New York, for
                               Defendant-Appellee Fahnestock & Co.,
                               Inc.

                               STEPHEN WAGNER, Cohen Tauber Spievack &
                               Wagner P.C., New York, New York, for
                               Defendant-Appellee Michael Reiter.

                               No appearance by Barry Gesser or Apollo
                               Equities.
```

WINTER, Circuit Judge:

Several individual investors appeal from Judge Crotty's dismissal of their complaint alleging securities fraud in violation of Section 10(b). We dispose of this appeal by both summary order and opinion. In the summary order issued simultaneously with this opinion, we affirm in part and vacate and remand in part with regard to most appellees. In this opinion, we affirm the dismissal of the federal claim and vacate and remand on the state law claim with regard to one group of appellees, principally Isaac R. Dweck.[1]

---

[1] Isaac R. Dweck is sued individually and as a custodian for Nathan Dweck, Barbara Dweck, Morris I. Dweck, Ralph I. Dweck, and Jack Dweck. Although appellants refer broadly to "the Dwecks," their allegations regarding the Dwecks seem to involve only Isaac R. Dweck.

BACKGROUND

This litigation arises out of a fraudulent scheme engaged in by a now-defunct broker-dealer, A.R. Baron ("Baron").  Over the course of four years beginning in 1992, Baron defrauded customers of millions of dollars.  As a result, Baron's former officers, directors, and key employees have been convicted of various crimes.

As pertinent here, and based on the complaint, the allegations of which we assume to be true, Baron's scheme used high-pressure sales campaigns involving "cold calls" to potential customers.  The goal of the scheme was to induce the customers to purchase securities in initial public offerings of small, unknown companies with negligible profits.  The salespeople would falsely represent that the stocks were the subject of an active, rising market, and the purchasers were led to believe that the prices they paid were set by trading in that arms-length market.  In fact, the market was principally a series of artificial trades orchestrated by Baron designed to create a false appearance of volume and increasing price.  Baron's scheme was a paradigmatic "pump and dump" scheme.

The scheme was in part furthered by "parking" stock with trusted Baron investors, including Dweck.  "Parking" would involve placing stock in the investor's account while Baron retained the risk of loss by promising to buy back shares, if necessary, at a price that afforded the insider a guaranteed

profit.  Based on Baron's salespeople's false representations of trading volume and increasing stock prices inducing customers to buy, Baron and its co-conspirators would sell their holdings at a profit before the stock crashed.

Appellants do not allege a liquid, efficient market in the securities.  Rather, they allege that the only market for them was based on artificial trading by Baron and others.  <u>See</u> Pls.' First Am. Compl. at 9 ¶ 17 ("[T]here was no real market for [the manipulated securities] outside of Baron, and its customers, and other brokers with whom it conspired.  Because of the limited public information available . . . (few, if any, were followed by other brokerage firm analysts)[,] Baron brokers were able to 'box' the stock.").[2]  Appellants alleged that Baron and Bear Stearns, <u>see</u> <u>infra</u> note 4, falsely represented the securities

---

[2] Doubt has been cast upon the ability of plaintiffs alleging manipulation of securities prices to prove the existence of an actual liquid, efficient market for the securities that have allegedly been manipulated.  <u>See</u> Charles R. Korsmo, <u>Mismatch:  The Misuse of Market Efficiency in Market Manipulation Class Actions</u>, 52 Wm. & Mary L. Rev. 1111, 1114-17, 1171 (2011); <u>see also</u> <u>West v. Prudential Sec., Inc.</u>, 282 F.3d 935 (7th Cir. 2002).  In a liquid, efficient market, current prices are publicly reported in real time.  To affect those prices -- say, to create the appearance of a rising demand and price for a particular security -- the manipulator would have to buy all the shares offered by the tens of thousands, if not millions, of traders wanting to sell at the higher price with the manipulators having no hope of finding buyers at that higher price.  The "pumping" would thus be enormously expensive and the "dumping" impossible.  Because proving reliance in schemes like Baron's, involving salespeoples' false representations of a market, is not a serious problem, the implications of these insights relate principally to class actions.  There may thus be some merit to a modified presumption of reliance in market manipulation cases because reliance by investors on a misrepresentation of a price as being set by an active, arms-length market may be presumed.  <u>See</u> Korsmo, <u>supra</u>, at 1171.  We leave this issue for consideration by future panels but call to the reader's attention the cited discussions.

were trading in "an active, liquid, bona fide market," see Pls.' First Am. Compl. at 10 ¶ 21, 16 ¶¶ 40-41, and that appellants believed the price at which the securities were offered was that established by that public market rather than an artificial price established by Baron.  The deception on which appellants relied, therefore, were statements by Baron's salespeople that the customers were buying at a price set by public market activity.

The complaint alleged that Dweck was one of Baron's principal investors, provided Baron with short-term cash infusions and financing for specific deals, and allowed Baron to park certain securities on particular occasions in his accounts at other broker-dealers.  Dweck was rewarded with ownership in companies on a preferential basis and a guaranteed return on his parking arrangements as well.  These acts undoubtedly facilitated Baron's frauds.  The impact of Dweck's involvement is alleged to have been twofold.  Parking by Dweck and others "creat[ed] a false impression in the minds of Baron customers of the value and liquidity of the 'parked' securities and induced Baron customers . . . to make investments based on Baron's illusion of trading activity," id. at 44 ¶ 131, while Dweck's provision of funds to Baron prolonged the firm's frauds.  See id. at 18 ¶ 46 (noting the importance of collective action for the fraud to succeed); see also id. at 81 ¶ 251.

However, appellants' claims for damages do not contain discrete claims related to the prices paid for the particular

6

1    securities parked by Dweck at times they were trading.  Rather,
2    they seek to recover damages for all losses caused by Baron.
3    While the complaint contains voluminous records of trades
4    involving securities of various firms over extended periods of
5    time, no attempt is made to connect particular trades in
6    particular securities to Dweck's parking.

## DISCUSSION

As noted with regard to Dweck, the only legal claims in the complaint argued on this appeal are that:  (i) his conduct involved market manipulation in violation of Section 10(b) and Rule 10b-5; and (ii) he aided and abetted, and conspired to commit, fraud under New York law.  Also, appellants make no claim for recovery from Dweck for damages caused by parking particular securities but seek, like our dissenting colleague, to impose liability on Dweck for all of Baron's deceptive activities.

We review <u>de novo</u> a district court's dismissal of a complaint for failure to state a claim under Rule 12(b)(6).  <u>Selevan v. N.Y. Thruway Auth.</u>, 584 F.3d 82, 88 (2d Cir. 2009).  "In conducting this review, we assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'"  <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009)).  A complaint alleging securities fraud in a private action for damages is subject to heightened pleadings standards.  First, it must satisfy Rule 9(b), which requires that "a party must state with particularity

the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Second, under the pleading standards of the Private Securities Litigation Reform Act, codified at 15 U.S.C. § 78u-4(b), the allegations of the state of mind required for a Section 10(b) violation -- scienter or recklessness, Ganino v. Citizens Utils. Co., 228 F.3d 154, 168-69 (2d Cir. 2000) -- must state "facts [either] (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

Valid securities-manipulation claims under Section 10(b) must allege: "(1) manipulative acts; (2) damage; (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." Id. at 101. These elements -- save for the requirement of manipulative acts and a misplaced belief in the price of the security as being set by arms-length, bona fide trading[3] -- are, of course, identical to Section 10(b) claims generally. See

---

[3] We do not read ATSI's reference to "reliance on an assumption of an efficient market free of manipulation" as referring to a liquid, efficient market with prices publicly reported in real time. We read ATSI's reference to an "efficient" market to mean only a bona fide "market free of manipulation." 493 F.3d at 101; see also supra note 2.

8

Stoneridge Inv. Partners, L.L.C. v. Scientific-Atlanta, 552 U.S. 148, 156-57 (2008) (noting that the typical § 10(b) claim must make the same allegations).

There is no doubt that appellants have alleged a valid Section 10(b) claim against Baron based on false representations that the price Baron charged customers for securities was established in a market independent of artificial trading by Baron itself. They have also adequately alleged their reliance upon Baron's misrepresentations.

Our difficulty with regard to Dweck's liability under Section 10(b) arises from the lack of an allegation that Dweck was involved in any communication with any of the appellants. Dweck is alleged to have been one of a group that engaged in phony trading activity that created an "impression" of "value and liquidity" in securities being pedaled by Baron. There is no allegation that any appellant was told of Dweck's artificial trading, or purchased such securities in specific reliance on such trading. See Pls.' First Am. Compl. at 18 ¶ 46 (noting the importance of collective action for perpetrating the fraud); see also id. at 107 ¶ 332 (alleging reliance on defendants collectively and not individually). Baron and Bear Stearns[4] are

---

[4] Bear Stearns' role in reporting the prices of Baron securities is unclear in the allegations of the complaint. The complaint states that Bear Stearns, acting as a clearing broker for Baron, sent confirmations of transactions, which may have contained information as to the prices paid by the particular investor. See Pls.' First Am. Compl. at 16-17 ¶ 42. Because confirmations came after trades were made, the price information was the result, not the cause, of the fraud. Plaintiffs also allege that Bear Stearns

9

the sole sources alleged regarding the appellants' perceptions of prices at which trades were being made.

Dweck is sufficiently alleged to have had particular knowledge of some artificial trades, to have participated in them, and to have actively facilitated Baron's fraudulent business generally by loans and other investments.  The issue is whether, as appellants argue and our dissenting colleague agrees, these allegations sufficiently support a Section 10(b) claim for damages by all the appellants for all the fraudulent sales of securities to them by Baron.

In pursuing a claim against Dweck for all damages caused by Baron, appellants make no claim of Dweck's liability under respondeat superior or other common law theory of vicarious liability.  They have also abandoned any claim on appeal that Dweck is liable under Section 20(a) as a "controlling person" -- any "person who, directly or indirectly, controls any person liable under [the '34 Act]" is "liable jointly and severally" for the violation, 15 U.S.C. § 78t(a) -- with regard to Baron's fraud.  And, they have dropped all claims based on Section 9 of the '34 Act.  15 U.S.C. § 78i (prohibiting "any transaction"

---

issued monthly statements to investors, which may have contained information as to current value based on share price. Id.  The values reported, if reported, in the monthly statements, would have been derived from reports of traders by the brokers used by the manipulators, in Dweck's case, Fahnestock & Co, Inc.  See id. at 59-60 ¶ 178 (suggesting that brokers book trades on behalf of their clients); id. at 44 ¶ 130 (stating that Baron was responsible for booking the parking transactions and placing shares in customer account).

effected for "the purpose of creating a false or misleading appearance of active trading in any security . . . or a false or misleading appearance with respect to the market for any such security").[5]

Therefore, because there is no aiding and abetting liability in private actions under Section 10(b), Dweck may be liable in this matter only as a primary violator. Cent. Bank of Denver N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 180, 191 (1994). The Supreme Court has held that to prove a primary violation of Section 10(b), in such a private action, a plaintiff must allege that the specific defendant was identified as making the pertinent misrepresentation(s). Stoneridge, 552 U.S. at 158-59. Otherwise, the plaintiff's complaint would fail to allege reliance upon a misrepresentation made by that defendant, an element of a valid Section 10(b) claim for damages caused by a primary violator of that section. In short, an allegation of acts facilitating or even indispensable to a fraud is not sufficient to state a claim if those acts were not the particular

---

[5] At the time this action was filed, and indeed for much of the period during which it has been litigated, Section 9 of the Securities and Exchange Act prohibited, and provided a remedy for those who were injured as a result of, certain manipulative conduct in the trading of securities traded on "national securities exchanges." See, e.g., 15 U.S.C. § 78i(2006). Plaintiffs' Section 9 claim, asserted in a prior iteration of the complaint, was dismissed by the district court as a result of that particular then in-force limitation. See Fezzani v. Bear, Stearns & Co., 384 F. Supp. 2d 618, 641 (S.D.N.Y. 2004). The Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, 124 Stat. 1376, significantly amended Section 9 by, among other changes, removing the "registered on a national securities exchange" limitation. Section 9, on its face, now covers manipulative conduct in the trading of most securities.

1    misrepresentations that deceived the investor.  See, e.g., id. at
2    157-59.
3         For example, in Stoneridge, the defendant, Scientific-
4    Atlanta, had knowingly structured a sale of cable boxes to
5    Charter at an artificially high price.  Id. at 154.  At the end
6    of the year, Scientific-Atlanta returned the excess portion of
7    the price by purchasing advertising from Charter at above-market
8    prices.  Id. at 154-55.  This was alleged to have been a phony
9    transaction designed only to allow Charter to report the returned
10   excess as a purchase of advertising by Scientific-Atlanta, thus
11   inflating Charter's revenue, and then to capitalize the inflated
12   costs of the cable boxes, thereby decreasing Charter's apparent
13   operating costs.  Id.  Although the complaint in Stoneridge
14   alleged that the transactions had no economic substance and were
15   specifically intended by Scientific-Atlanta to deceive investors
16   (and Charter's auditor) -- precisely as appellants have alleged
17   with regard to Dweck's acts -- the Supreme Court held that
18   Scientific-Atlanta could not be liable in a civil action for
19   damages under Section 10(b).  Id. at 154-55, 166-67.  The ground
20   for this holding was that only Charter, and not Scientific-
21   Atlanta, had made the fraudulent statements to the public through
22   its financial statements.  Id. at 155, 166-67.
23        The Supreme Court further elaborated this test in Janus
24   Capital Grp., Inc. v. First Derivative Traders, 564 U.S. __, 131
25   S. Ct. 2296 (2011).  In Janus, the Court held that a corporation

12

serving as the investment advisor and administrator -- the manager -- of a mutual fund could not be liable under Section 10(b) for false statements made in the mutual fund's prospectuses.  Id. at 2299, 2305.  The Court held that the advisor/administrator was insulated from Section 10(b) civil liability because the false statements to the public were made only in the name of the mutual fund, a separate corporate entity. Id. at 2305.  Given that the advisor/administrator, as the Fund's manager, had surely prepared the prospectuses, Dweck's more limited involvement in Baron's frauds, although serious, is foreclosed by Janus (and Stoneridge as well).

Applying these principles to the present claims, appellants were required to allege acts by Dweck that amounted to more than knowingly participating in, or facilitating, Baron's fraud to state a claim under Section 10(b).  To reiterate, under ATSI, manipulation violates Section 10(b) when an artificial or phony price of a security is communicated to persons who, in reliance upon a misrepresentation that the price was set by market forces, purchase the securities.  493 F.3d at 101-02.  Under Stoneridge, 552 U.S. at 159-60, 166-67, and Janus, 131 S. Ct. at 2305, only the person who communicates the misrepresentation is liable in private actions under Section 10(b).  The present complaint alleges only that Baron and Bear Stearns communicated the artificial price information to the would-be buyers.  Therefore, allegations of financing Baron's operations and parking some

13

securities fail to state a Section 10(b) <u>private claim for damages</u> against Dweck.

To summarize, appellants have sufficiently pleaded with particularity that Dweck provided knowing and substantial assistance in financing and facilitating the Baron fraud. While such allegations would easily be sufficient in an SEC civil action, <u>see</u> 15 U.S.C. § 78t(e), or a federal criminal action because this knowing and substantial assistance constitutes, at the least, aiding and abetting, <u>see</u> 18 U.S.C. § 2, they do not meet the standards for private damage actions under Section 10(b).

Nevertheless, with regard to appellants' state law claims -- civil conspiracy to defraud and aiding and abetting fraud -- the complaint alleges sufficient involvement by Dweck in the scheme to survive a motion to dismiss. Therefore, we vacate the dismissal and remand appellants' state law claims against Dweck for further proceedings.[6]

## CONCLUSION

We therefore affirm the district court's dismissal of appellants' federal securities claims against Dweck and vacate and remand the state law claims.

---

[6] It is appropriate for the district court to retain jurisdiction over these state claims for the reasons expressed in its earlier opinion, that is, because these state law claims arose out of the same set of facts as the federal claims. <u>See</u> <u>Fezzani v. Bear, Stearns & Co.</u>, 592 F. Supp. 2d 410, 429-30 (S.D.N.Y. 2008).

14


A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit