UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOHAMMED FEZZANI, *et al.*,

       Plaintiffs,

 -against-

BEAR, STEARNS & COMPANY INC., *et al.*,

       Defendants.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-5-18

99 Civ. 0793 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

 Almost two decades ago, Plaintiffs, customers of a now defunct broker dealer, A.R. Baron & Co. ("Baron"), brought an action, seeking money damages from defendants for their alleged participation in a coordinated fraud on Plaintiffs. Plaintiffs' claims were dismissed. *See Fezzani v. Bear, Stearns & Co.*, 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005); *Fezzani*, 592 F. Supp. 2d 410 (S.D.N.Y. Sept. 23, 2008). On appeal, the Second Circuit affirmed the dismissal of the federal claims, but remanded the state law claims for (1) aiding and abetting fraud and (2) civil conspiracy to defraud against Isaac R. Dweck, individually and as custodian for Nathan Dweck, Barbara Dweck, Morris I. Dweck, Ralph I. Dweck, and Jack Dweck ("Dweck Defendants"), and Abraham Wolfson, Morris Wolfson, and Aaron Wolfson ("Wolfson Defendants," and together with Dweck Defendants, "Defendants"). *See Fezzani*, 716 F.3d 18 (2d Cir. 2013); *Fezzani*, 527 F. App'x 89 (2d Cir. 2013).

 After four years of repeated, but unfulfilled, promises, Plaintiffs have failed to produce evidence sufficient to show their damages. Defendants now move for summary judgment. In the alternative, Defendants move for dismissal as sanctions.

 For the reasons set forth below, the Court **GRANTS** the motion for summary judgment and **DENIES** the motion for sanctions, as moot.

1

## FACTS

This action arises out of a massive fraud committed by Baron, its officers and employees, and its co-conspirators. Baron was a New York broker-dealer that operated from approximately May 1992 until its bankruptcy in July 1996. Horowitz Decl. Ex. A, ECF 186-1, ¶ 1. Baron and its officers were convicted of securities fraud. *Id.* at ¶¶ 2, 4.

In February 1999, Plaintiffs filed a complaint, asserting claims against eleven individuals and organizations which allegedly propped up Baron's fraudulent activities. *See* ECF 1. Plaintiffs claim damages of $7.25 million, out of more than $80 million in trading losses attributed to Baron's frauds. Horowitz Decl. Ex. A at ¶¶ 7, 37. When some of the asserted claims were dismissed, Plaintiffs filed an Amended Complaint in April 2005, alleging six claims: (1) federal securities fraud based on the Defendants' misrepresentations and omissions; (2) federal securities fraud based on market manipulation; (3) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (4) common law fraud; (5) civil conspiracy to defraud; and (6) aiding and abetting fraud. *See* Amended Complaint, ECF 62; Horowitz Decl. Ex. A. This Court dismissed all claims with respect to substantially all defendants. *Fezzani*, 592 F. Supp. 2d 410. On appeal, the Second Circuit affirmed the dismissal of the federal securities claims, but reinstated two state law claims against Defendants and remanded. *Fezzani*, 716 F.3d 18; *Fezzani*, 527 F. App'x 89.

On remand to the District Court, more than a decade after the filing of the original complaint, Plaintiffs and Defendants agreed to truncate discovery in an effort to expedite the resolution of the lawsuit. Accordingly, the parties agreed to first determine Plaintiffs' damages, if any. Horowitz Decl., ECF 186, ¶ 3; Folkenflik Decl., ECF 204, ¶¶ 7, 9. In April 2014, the parties agreed to retain experts—Charles Myers, Paul Moulden, and Adam Kalt from the firm Economic

Analysis Group, Ltd. ("EAG")—to analyze the Plaintiffs' trading records and determine any trading losses and gains in their accounts. Def. Stmt. 56.1, ¶¶ 2, 3; Pl. Stmt. 56.1, ¶¶ 2, 3.

In September 2014, EAG informed Defendants that, without a complete set of the individual Plaintiffs' account statements, EAG was unable to perform the requested analysis. Def. Stmt. 56.1, ¶ 4; Pl. Stmt. 56.1, ¶ 4. Defendants subsequently requested Plaintiffs to provide the missing statements, but to date, Plaintiffs have not produced them. Def. Stmt. 56.1, ¶ 5; Pl. Stmt. 56.1, ¶ 5.

## LEGAL STANDARDS

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. § 56(a). The Court "resolve[s] all ambiguities and draw[s] all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013). Where the non-moving party has the burden of proof, however, the moving party need only show that there is no evidence to support a necessary element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is warranted where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015).

## DISCUSSIONS

### I. Motion for Summary Judgment

Defendants now move for summary judgment, contending that Plaintiffs cannot adduce any evidence to establish their claimed damages. The motion is granted.

To establish a claim for aiding and abetting fraud or for conspiracy to defraud, Plaintiffs must establish that they suffered damage. *See Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (One element of a claim for aiding and abetting fraud is "the existence of a fraud");

3

*Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 463 (S.D.N.Y. 2009) ("To state a proper claim for conspiracy to defraud the plaintiff must allege both a primary tort [*i.e.,* fraud] and also show the four elements of a conspiracy"); *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) (One element of a claim for fraud is "damages").

At the center of dispute is whether Plaintiffs can establish their damages. Mem. 20; Opp'n. Mem. 4. Over the past four years, parties have engaged in discovery focused on damages, and Plaintiffs produced some trading records and monthly statements of the Plaintiffs' accounts with Baron ("Baron Accounts"). Folkenflik Decl., ¶¶ 11, 12. Both parties agree that the production is incomplete. Def. Stmt. 56.1, ¶ 5; Pl. Stmt. 56.1, ¶ 5. In fact, Plaintiffs admit that they "may not have some documents." Opp'n. Mem. 4. Parties disagree, however, on whether the missing documents are necessary to establish the Plaintiffs' damages.

### (1) Appropriate Measure Of Damages

Under New York's longstanding out-of-pocket rule, "damages for fraud are to be calculated to compensate plaintiffs for what they lost because of the fraud." *Matana v. Merkin*, 989 F. Supp. 2d 313, 321–22 (S.D.N.Y. 2013) (internal quotations omitted); *see also Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017). In the securities context, damages under the out-of-pocket rule "consist of the difference between the price paid and the value of the stock when bought." *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) (internal quotations omitted); *see also Levine v. Seilon*, 439 F.2d 328, 334 (2d Cir. 1971) (Friendly, J.) ("a defrauded buyer of securities is entitled to recover only the excess of what he paid over the value of what he got").

Plaintiffs seek here to establish, as damages, their trading loss in connection with "all transactions with Baron." Horowitz Decl. Ex. A, ¶¶ 37, 46. While there is a substantial reason to

4

doubt that the trading loss Plaintiffs seek comports with the New York's out-of-pocket rule[1], Defendants do not object to using trading loss as a measure of damages. Accordingly, the Court will assume that the trading loss comports with the out-of-pocket rule.

### (2) Missing Documents Are Necessary to Establish Trading Loss

Notwithstanding Plaintiffs' repeated promises to produce the necessary evidence of their claimed losses, Plaintiffs have made only a limited production of their trading records and monthly statements. Even that production is incomplete. Def. Stmt. 56.1, ¶ 5; Pl. Stmt. 56.1, ¶ 5. Defendants contend that without the missing documents, Plaintiffs cannot establish that they suffered any trading loss. Mem. 16. Defendants are correct.

In the relevant time period, Plaintiffs dealt with two types of Baron Securities: (1) First Type Baron Securities that were held and traded only in Baron Accounts; and (2) Second Type Baron Securities that were, at one point, held in Baron Accounts, but were also held, at another point, in third party brokerage firms. *See* Reply Myers Decl., ECF 214, ¶ 3. Any trading loss in connection with all "transactions with Baron" should be the sum of: (1) the profit and loss ("P&L") from trades of First Type Baron Securities ("First P&L") and (2) the P&L from trades of Second Type Baron Securities ("Second P&L"), incurred in reliance of the Defendants' alleged misconduct. *See* Reply Myers Decl. ¶¶ 4, 9.

According to Mr. Myers, the expert retained by both parties, he was "unable to calculate Plaintiffs' profits and losses overall." Myers Decl. ¶6. While the First P&L could be calculated based on the Plaintiffs' document production, it is "impossible" to compute the Second P&L. It is impossible because Plaintiffs have failed to produce any trading records or monthly statements

---

[1] The trading loss is calculated as the difference of (1) the stock price at the time the stock is purchased and (2) the stock price at the time the stock is sold. Out-of-pocket damages are calculated as the difference of (1) the price paid for the stock and (2) the actual value of the stock, measured at the time the stock is purchased.

5

of the third party brokerage firms. Reply Myers Decl. at ¶¶ 3, 6, 10; Kelly Decl. Ex. C ("Buy" and "Sell" rows). It is undoubtedly the Plaintiffs' obligation to produce these records. Plaintiffs never denied it; and repeatedly promised to produce the missing records, but never did so. As a result, the Second P&L can only be estimated as "the difference in the aggregate value of shares received in the Baron Accounts and aggregate value of shares delivered out of the Baron Accounts." *Id.*, ¶ 13. But, according to Mr. Myers, this estimate is not sufficiently accurate: "[t]here is no way to determine ... the accuracy of [the] estimate without a complete set of trading records," *id.*, and that in fact the "uncertainty of [his] estimate is maximized in this case because of the massive number of [Second Type Baron Securities,]" *id.*, ¶ 15. Mr. Kelly, the Plaintiffs' independent expert,[2] does not disagree with Mr. Myers. Mr. Kelly merely states that "[w]ithout having spent any time to attempt to reconcile [Mr. Myers's calculations], I have no reason to doubt the accuracy of EAG's work in that regard." Kelly Decl., ¶ 13.

The Court accepts Mr. Myers's opinion and analyses. The Second P&L cannot be computed without the trading records or monthly statements of the third party brokerage firms. Without such information, it is not possible to know (1) whether Second Type Baron Securities were bought or sold through the third party brokerage firms and, if so, (2) the price at which Second Type Baron Securities were bought or sold. Absent that information, the Second P&L simply cannot be computed. *See* Reply Myers Decl., ¶¶ 6–8.

The actual Second P&L cannot be supplanted with Mr. Myers's estimate of it because there is no reasonable way to determine the estimate's accuracy. Mr. Myers's estimate is, in effect, grounded on an assumption that the third party brokerage firms did not trade Second Type Baron

---

[2] When the opinion of Mr. Myers—an expert retained by both parties—seemingly favored Defendants, Plaintiffs appear to have independently retained Mr. Kelly to receive a second opinion on the same damages issues. *See* Kelly Decl., ¶ 2.

Securities on the market. *See id.* ¶¶ 7, 8. For Mr. Myers's estimate to be sufficiently accurate, the third party brokerage firms must have operated as mere repositories of Second Type Baron Securities. *See id.* This major assumption belies common experience; and in any event, cannot be verified without trading records or monthly statements of the third party brokerage firms. Absent affirmative proof that the third party brokerage firms did not trade Second Type Baron Securities, no reasonable jury could find that Mr. Myers's estimate is sufficiently accurate. Mr. Kelly's statement—that he has "no reason to doubt the accuracy of EAG's work"—is clearly insufficient to raise a factual question about the estimate's accuracy. Therefore, the Court determines that Mr. Myers's estimate of the Second P&L cannot be used as a proxy of the actual Second P&L.

Plaintiffs contend that some of the missing records "may be obtainable" from other sources. Opp'n. Mem. 5. That expression of wishful thinking is insufficient to deny Defendants' motion. Furthermore, the Plaintiffs have struggled for four years to find the missing materials, and they have been unsuccessful. That does not change the burden of proof. It is the Plaintiffs' duty to establish the damage element, not the Defendants'. Plaintiffs had more than sufficient opportunity to take discovery of relevant records from other sources to establish the Second P&L, but failed to do so. Plaintiffs cannot now shift their burden to the Defendants.

Plaintiffs also raise fringe issues that are simply irrelevant. Plaintiffs contend that Plaintiffs are entitled to pre-judgment interest and their damages should not be set-off by the payment that Plaintiffs received out of a restitution fund created by the U.S. Securities and Exchange Commission. *See e.g.,* Opp'n. Mem. 3. These issues would be relevant only if Plaintiffs first prove that they suffered damages, but they have failed to do so.

For the reasons stated above, the Court determines that Plaintiffs failed to adduce sufficient evidence to establish the damages. The motion for summary judgment is granted.

## II. Motion for Sanctions

Defendants move for dismissal as a sanction for spoliation of evidence and/or for failing to comply with the Court's discovery orders. In view of the Summary Judgment against Plaintiffs, the Court denies the motion, as moot.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motion for summary judgment and DENIES the motion for sanctions, as moot.

The Clerk of the Court is directed to close all pending motions and terminate this case.

Dated: New York, New York
       January 5, 2018

SO ORDERED

PAUL A. CROTTY
United States District Judge