UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MOHAMMED FEZZANI, et al.,

                Plaintiffs,                      99 Civ. 0793 (PAC)

      -against-                                 **OPINION & ORDER**

BEAR, STEARNS & COMPANY INC., et al.,

                Defendants.
-----------------------------------------------------------------X

This case presents litigation spanning over two decades with no definitive end in sight. In 1999, Plaintiffs brought this lawsuit against Defendants (individually, "Dweck Defendants" and "Wolfson Defendants")[1] for their alleged participation in a coordinated securities fraud by the now defunct broker dealer, A.R. Baron & Co. ("Baron"). In 2005, Plaintiffs' claims against Defendants were dismissed.[2] *See Fezzani v. Bear, Stearns & Co.*, 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005); *Fezzani v. Bear, Stearns & Co.*, 592 F. Supp. 2d 410 (S.D.N.Y. Sept. 23, 2008). On appeal, the Second Circuit substantially affirmed the district court decision, but reinstated Plaintiffs' state law claims of (1) aiding and abetting fraud, and (2) civil conspiracy to defraud. *See Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18 (2d Cir. 2013); *Fezzani v. Bear, Stearns & Co.*, 527 F. App'x 89 (2d Cir. 2013).

In 2018, following remand, this Court granted Defendants' motion for summary judgment on the remaining state law claims after concluding that Plaintiffs had failed to "adduce sufficient evidence to establish" the element of damages. *See Fezzani v. Bear, Stearns & Co.*, 2018 WL

---

[1] The Dweck Defendants consist of Isaac R. Dweck, individually and as custodian for Nathan Dweck, Barbara Dweck, Morris I. Dweck, Ralph I. Dweck, and Jack Dweck. The Wolfson Defendants consist of Abraham Wolfson, Morris Wolfson, and Aaron Wolfson. *See* ECF 1.

[2] This case was originally assigned to the Honorable Richard Casey and was reassigned to this Court following Judge Casey's death in March 2007.

1

324897, at *4 (S.D.N.Y. Jan. 5, 2018). The Second Circuit vacated that decision and remanded the case back to this Court. *See Fezzani v. Dweck*, 779 F. App'x 815 (2d Cir. 2019).

The Dweck Defendants now move for partial summary judgment on two affirmative defenses alleged in their June 2015 Answer. The Wolfson Defendants also join the motion for partial summary judgment but, because their June 2015 Answer did not assert those two affirmative defenses, simultaneously move to amend their Answer to incorporate the defenses.

For the reasons set forth below, the Court **DENIES** the motion for partial summary judgment and **DENIES** the motion for amendment, as moot.

## BACKGROUND FACTS

From May 1992 until its bankruptcy in July 1996, Baron, its officers and employees, and its co-conspirators, engaged in a massive securities fraud.[3] *Fezzani*, 2018 WL 324897, at *1. Plaintiffs were customers of Baron when this fraud was afoot. *Id.* In 1999, Plaintiffs filed this lawsuit against eleven individuals and organizations—including Defendants—for their alleged participation in Baron's fraudulent scheme. *See* ECF 1.

In 1999, Bear Stearns Securities Corporation—who had acted as Baron's clearing broker from 1995 to 1996—entered into a settlement agreement (the "Consent Order") with the Securities Exchange Commission ("SEC") and the New York County District Attorney. Defs.' Stmt. 56.1 ¶ 3, ECF 237; Horowitz Decl. Ex. C ("Consent Order"), ECF 239-3. Under the terms of the Consent Order, Bear Stearns agreed to contribute $30 million into a restitution fund ("Restitution Fund") to pay out claims by former Baron customers. *See* Consent Order. The SIPC Trustee responsible for overseeing Baron's liquidation proceedings was also tasked with administering the Restitution Fund. Defs.' Stmt. 56.1 ¶ 4.

---

[3] Baron and its officers were convicted of securities fraud. Horowitz Decl. Ex. A, ECF 186-1.

In September 2000, Plaintiffs collectively recovered approximately $3.8 million in losses from the Restitution Fund.[4] Pls.' Stmt. 56.1 ¶¶ 33, 34, ECF 240. As a condition for recovery, however, Plaintiffs were required to individually sign a release and assignment agreement ("Release Agreement") with the SIPC Trustee. Folkenflik Decl. Ex. A ("Release Agreement"), ECF 242-1. The Release Agreement contained two important provisions: (1) each Plaintiff agreed to assign the SIPC Trustee his or her right to sue Defendants for their participation in Baron's underlying fraud "to the extent of the Consideration" received; and (2) the Release Agreement provided that "acceptance of the Consideration may . . . operate as a setoff against a judgment or award Claimant may obtain against any third party[.]" *See* Release Agreement.

On September 13, 2000, within days of the Release Agreement's execution, Plaintiffs executed another agreement ("Letter Agreement") with the SIPC Trustee. Folkenflik Decl. Ex. B ("Letter Agreement"), ECF 242-2. The Letter Agreement acknowledged Plaintiffs' Release Agreement with the SIPC Trustee as well as their recovery from the Restitution Fund. *See* Letter Agreement, at 1. The Letter Agreement stated, however, that the SIPC Trustee would "ratify" the present action before this Court and be bound by all its decisions. *See id.* And in exchange for the SIPC Trustee's cooperation, Plaintiffs agreed to pay back their earlier recovery of $3.8 million (less any litigation costs incurred) should they prevail in the instant action. *Id.* at 2. Notably, the Letter Agreement provided that the SIPC Trustee was not obligated to contribute to the prosecution of the present litigation but, in the same vein, that the SIPC Trustee would have no control over the handling or disposition of the case as well. *Id.*

In May 2003, the Wolfson Defendants and the Dweck Defendants each entered into settlement agreements of their own ("2003 Agreements") with the SIPC Trustee. Horowitz Reply

---

[4] Two individual plaintiffs, Adam Cung and James Bailey, did not obtain any recovery from the Restitution Fund. Pls.' Stmt. 56.1 ¶ 35, ECF 240.

3

Aff. Exs. G, H, ECF 245. Pursuant to the 2003 Agreements, the Dweck Defendants agreed to pay $800,000, Horowitz Reply Aff. Ex. G ¶ 1, and the Wolfson Defendants agreed to pay $90,000 to the SIPC Trustee. Horowitz Reply Aff. Ex. H ¶ 1. In return for these payments, the SIPC Trustee released any and all claims that it had against the Defendants. Horowitz Reply Aff. Exs. G, H ¶ 2. The Dweck Defendants' settlement agreement, however, was left unsigned.

Despite this case's complex procedural history, the outstanding motion to be decided presents narrow legal issues. The Defendants move for partial summary judgment on two affirmative defenses, which allege: (1) that Plaintiffs lack Article III standing to sue Defendants for the $3.8 million they already recovered from the Restitution Fund; and (2) even if there is Article III standing, that Plaintiffs' earlier $3.8 million recovery should be offset from any damages ultimately recovered in the present litigation. *See* ECF 238. The Wolfson Defendants also simultaneously move to amend their June 2015 Answer to incorporate these two affirmative defenses. *See* ECF 233.

## LEGAL STANDARD

A party may move for (and a court will grant) summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is appropriate where "after adequate time for discovery and upon motion," the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a summary judgment motion, the district court must "resolve all ambiguities and draw all reasonable inferences in the light most favorable to the nonmoving party." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013).

## DISCUSSION

### I. Article III Standing

The Defendants contend that Plaintiffs do not have Article III standing to sue on behalf of the $3.8 million that they already recovered from the Restitution Fund. "To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).

In *Sprint Communications v. APCC Services*, 554 U.S. 269 (2008), the Supreme Court addressed the question of "whether an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor." *Id.* at 271. After examining the history and tradition of Article III standing doctrine, the Court answered yes: an assignee does have standing to bring such a claim notwithstanding his promise to remit recovery to the claim's assignor. *Id.*

Viewing the record in the light most favorable to Plaintiffs, the Court concludes that, under *Sprint Communications*, Plaintiffs have standing to sue Defendants for the $3.8 million already recovered from the Restitution Fund. As an initial matter, Defendants are correct that the Plaintiffs assigned to the SIPC Trustee (through the Release Agreement) their right to sue on behalf of the $3.8 million already recovered. Defs.' Mem. 9. But the Release Agreement was modified by the subsequent Letter Agreement, which had the legal effect of *re-assigning* Plaintiffs their right to sue for the $3.8 million in exchange for their promise to remit that amount to the SIPC Trustee. *See* Letter Agreement, at 1-2. So effectively, Plaintiffs are assignees of a legal claim to sue for $3.8 million who have promised to remit that amount to the SIPC Trustee (the assignor). Under

5

*Sprint Communications*, then, they have demonstrated Article III standing to sue on behalf of the $3.8 million. *See* 554 U.S. at 271.

The fact that the Letter Agreement did not employ specific terminology evincing an assignment bears little on the question of whether a valid assignment was formed. *See Miller v. Wells Fargo Bank Int'l Corp.*, 540 F.2d 548, 557 (2d Cir. 1976). Under New York law, all that is required for an effective assignment is that it was intended, and that the assignor was "divested of all control and right to cause of action" in the assigned right. *Id.* By any measure, the Letter Agreement satisfies these prerequisites. It expressly deprives the SIPC Trustee of all control over the assigned right: Plaintiffs' claim against Defendants for the $3.8 million amount. *See* Letter Agreement, at 1 ("[Y]ou agree to be bound by all decisions of the Court in that action to the same extent that the Clients shall be bound."). And it requires the SIPC Trustee to be bound by the Plaintiffs' decisions in the present litigation without any *ex post* recourse against them. *See id.* at 2 ("The Clients are authorized to settle the Fezzani Action and Related Proceedings, either in whole or in part, without regard for whether the settlement is sufficient…to you[.]"). Thus, under New York Law, the Letter Agreement effectuated a valid re-assignment of Plaintiffs' right to sue for the $3.8 million.

Because the Letter Agreement was supported by consideration, the assignment was also irrevocable. *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 153 F. Supp. 2d 512, 525-26 (S.D.N.Y. 2001), aff'd, 43 F. App'x 408 (2d Cir. 2002) (finding consideration evinced parties' intent to make assignment irrevocable). That consideration was, of course, Plaintiffs' promise to repay the SIPC Trustee $3.8 million—less any expenses incurred—should they recover in the present action. Indeed, this irrevocability point is critical because it pulls the rug out from underneath Defendants' argument that the 2003 Agreements, which intended to release potential claims by the SIPC Trustee against Defendants,

now deprives Plaintiffs of standing. Given that three years earlier, the Letter Agreement had *irrevocably* re-assigned to the Plaintiffs their right to sue Defendants for the $3.8 million, the 2003 Agreements could not (and did not) unilaterally revoke that reassignment.

In conclusion, Plaintiffs have established Article III standing to sue Defendants on behalf of the $3.8 million already recovered from the Restitution Fund. Plaintiffs are assignees of a claim for $3.8 million who, under the terms of the Letter Agreement, are obligated to remit that amount to the SIPC Trustee should they prevail in the present litigation. Accordingly, Defendants' affirmative defense claiming lack of Article III standing must be rejected. *Sprint Communications*, 554 U.S. at 271.

## II. Equitable Offset

The Defendants alternatively argue that any ultimate recovery by Plaintiffs in this action should be offset by the $3.8 million already paid out to them by the Restitution Fund. The parties spill much ink on this point, claiming that considerations in equity and precedent require this Court to deduct—or to preserve—$3.8 million from Plaintiffs' potential recovery. Defs. Mem. 8–12; Opp'n Mem. 13–18. But the equitable offset issue is moot in the wake of resolving the Article III standing question. As the Letter Agreement makes clear, Plaintiffs are obligated to repay the $3.8 million to the SIPC Trustee should they recover that amount in this action. So this promise by the Plaintiffs to indemnify $3.8 million quells any equitable concerns of double recovery or unjust

7

enrichment that Defendants raise.[5] Accordingly, Defendants' motion for partial judgement on the offset defense must be denied.

### III. Wolfson Defendants' Motion to Amend Answer

In light of this Court's denial of partial summary judgment on the two affirmative defenses, the Wolfson Defendants' motion to amend their Answer to incorporate such defenses is denied as moot.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion for partial summary judgment and **DENIES** the Wolfson Defendants' motion for amendment as moot. The Clerk of Court is respectfully directed to terminate the motions at ECF 233 and 238.

Dated: New York, New York  
May 4, 2021

SO ORDERED

*/s/ Paul A. Crotty*

HONORABLE PAUL A. CROTTY  
UNITED STATES DISTRICT JUDGE

---

[5] Defendants' reliance on *McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343 (S.D.N.Y. 2002), is misplaced. In *McDaniel*, the plaintiffs had recovered sizable compensatory and punitive damages in an arbitration proceeding against Bear Stearns for its participation in the Baron fraud. *Id.* at 350. The arbitration panel, however, had offset plaintiffs' damages award with their recovery from the Restitution Fund, and upon judicial review, the district court affirmed that arbitral decision. *See id.* at 346. Three facts distinguish *McDaniel* from this case. *First*, Bear Stearns (the defendants in *McDaniel*), in contrast to the Defendants, directly funded the Restitution Fund for the purpose of settling claims against it that arose from the Baron Fraud. Hence, Bear Stearns was entitled to the benefit of an offset from the very fund it had created for that purpose. *Second*, the *McDaniel* plaintiffs were not under any obligations to remit their recovery from the Restitution Fund—as Plaintiffs do here—to a third party. *Finally*, because the damages offset was ordered by an arbitration panel, the *McDaniel* court could only exercise limited judicial review of the arbitration ruling. The Court is not constrained here.

8