UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOHAMMED FEZZANI, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 99-CV-0793 (PAC) |
| BEAR, STEARNS & COMPANY, INC. et al., | ) |
| Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION FOR RECONSIDERATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ....................................................................................................................... 3

    I.    EVEN READING THE RECORD IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS, THE LETTER AGREEMENT WAS A RATIFICATION OF THIS ACTION BY THE REAL PARTY IN INTEREST, NOT A RE-ASSIGNMENT OF HIS CLAIMS ................................ 3

    II.    ONCE THE TRUSTEE RELEASED DEFENDANTS FROM ANY AND ALL CLAIMS, PLAINTIFFS' CLAIM TO RECOVER THE $3.78 MILLION FOR THE TRUSTEE BECAME MOOT. ........................................... 6

    III.    THERE IS NO BASIS TO NARROW THE SCOPE OF THE 2003 GENERAL RELEASES ....................................................................... 8

    IV.    PLAINTIFFS' PROCEDURAL OBJECTIONS ARE UNFOUNDED ................. 8

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*,
 626 F.3d 699 (2d Cir. 2010)...........................................................................................9

*Agee v. Paramount Commc'ns, Inc.*,
 114 F.3d 395 (2d Cir. 1997).............................................................................................7

*Altman v. Bedford Cent. Sch. Dist.*,
 245 F.3d 49 (2d Cir. 2001)..............................................................................................6

*In re CBI Holding Co., Inc.*,
 529 F.3d 432 (2d Cir. 2008)............................................................................................5

*Church of Scientology of California v. United States*,
 506 U.S. 9 (1992)............................................................................................................6

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
 790 F.3d 411 (2d Cir. 2015)............................................................................................5

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
 726 F.3d 62 (2d Cir. 2013)..............................................................................................4

*Fenstermaker v. Obama*,
 354 F. App'x 245 (2d Cir. 2009) ....................................................................................6

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
 528 U.S. 167 (2000)........................................................................................................6

*Fund Liquidation Holdings LLC v. Bank America Corp*,
 991 F.3d 370 (2d Cir. 2021)............................................................................................6

*Gesualdi v. Difazio*,
 2018 WL 1202640 (E.D.N.Y. Mar. 8, 2018)..................................................................8

*Gesualdi v. Fazio*,
 No. 16-cv-5209 (SJF), 2017 WL 8794775 (E.D.N.Y. Dec. 12, 2017) ...........................8

*ICON Grp., Inc. v. Mahogany Run Dev. Corp.*,
 829 F.2d 473 (3d Cir.1987).............................................................................................4

*In re Kurtzman*,
 194 F.3d 54 (2d Cir. 1999)..............................................................................................7

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*,
 987 F. Supp. 2d 311 (S.D.N.Y. 2013).............................................................................5

*Shearson Lehman Hutton, Inc. v. Wagoner*,
 944 F.2d 114 (2d Cir.1991).............................................................................................5

*Steinberg v. Columbia Pictures Indus., Inc.*,
 663 F. Supp. 706 (S.D.N.Y. 1987)..................................................................................9

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) ............................................................................................5

**Rules**

Fed. R. Civ. P. 17 ..........................................................................................................1, 4

Fed. R. Civ. P. 17(a)(3) .................................................................................................2, 3

Defendants Isaac R. Dweck, individually and as custodian for Nathan Dweck, Barbara Dweck, Morris I. Dweck, Ralph I. Dweck, and Jack Dweck (collectively, the "Dweck Defendants"), and Abraham Wolfson, Morris Wolfson, and Aaron Wolfson (the "Wolfson Defendants," and together with the Dweck Defendants, "Defendants"), respectfully submit this reply memorandum of law in further support of their joint motion for reconsideration of this Court's Opinion and Order dated May 4, 2021 denying their motion for partial summary judgment ("Order"). (Doc. 251.)

## PRELIMINARY STATEMENT

Contrary to the Court's Order and the arguments put forth by Plaintiffs in their opposition, it is facially apparent that in the September 15, 2000 letter ("Letter Agreement") between Plaintiffs and the A.R. Baron SIPC trustee ("Trustee"), the Trustee only ratified this action. The Trustee *did not* assign any claim. The Letter Agreement distinguishes between the two concepts. First, the Letter Agreement discusses Plaintiffs' transfer of their claims (which it describes as an assignment of claims) from the Plaintiffs to the Trustee. Second, the Letter Agreement discusses the Trustee's agreement (which it describes as a ratification of the action) to allow the Plaintiffs to proceed with this ligation. In discussing the second concept—the concept of ratification—the Letter Agreement does not use language related to assignments. Instead, the Letter Agreement closely tracks the language used by courts applying Fed. R. Civ. P. 17 to determine when a party other than the real party in interest may pursue a lawsuit. Thus, in accordance with the binding Second Circuit case law Defendants cited in their initial memorandum of law, the Letter Agreement effectively granted

Plaintiffs a power of attorney, authorizing them to litigate the Trustee's $3.78 million claim on his behalf—but nothing more.[1] To that end:

- When Plaintiffs commenced this action, they had standing to seek recovery of their alleged losses, including the $3.78 million;
- When Plaintiffs received $3.78 million from the Trustee and assigned to the Trustee any claims Plaintiffs had against third parties up to $3.78 million, the Trustee became the owner of and real party in interest for the $3.78 million claim;
- As permitted by Fed. R. Civ. P. 17(a)(3), as the real party in interest, the Trustee agreed with Plaintiffs' counsel to "ratify" this action, thereby authorizing Plaintiffs to pursue the Trustee's $3.78 million claim on his behalf in this action;
- The Trustee's subsequent representation in his 2003 releases of Defendants (the "2003 Releases")—which were so ordered by the Bankruptcy Court—that he did not assign any claims he ever had against Defendants tracks the plain meaning of the ratification in the Letter Agreement;
- The 2003 Releases released any and all claims the Trustee ever had against Defendants, thereby mooting Plaintiffs' claims (up to $3.78 million).

Thus, the Trustee retained ownership of the claim and the ability to release it—which he did in 2003.

No doubt recognizing the obstacle the 2003 Releases pose to their recovery here, Plaintiffs raise procedural objections to the Court applying those releases. Plaintiffs jump on the Court's observation that the Dweck Defendants' 2003 Release was unsigned, but ignore the fact that the release was so-ordered by Bankruptcy Judge Prudence Carter Beatty (as was the Wolfson 2003 Release), as evidenced on the face of both releases. Plaintiffs also question whether the Wolfson Defendants properly pleaded release in their Answer, but such an argument is irrelevant because if the 2003 Releases rendered Plaintiffs' claims moot up to $3.78 million—and they did—the Court cannot hear the claim. Regardless what the affirmative defense is called—lack of a "case or

---

[1] Additionally, as detailed below, *Fund Liquidation* does not contradict the binding Second Circuit case law Defendants cited in their opening memorandum of law. It limits those cases to the facts here—where the owner of a claim simply authorizes another to litigate the claim on his behalf without transferring ownership of the claim. The owner of the claim (here, the Trustee) is the real party in interest.

2

controversy," lack of standing, mootness, release, offset, or unjust enrichment—they all arise out of Plaintiffs' assignment of their claims to the Trustee and the Trustee's subsequent release of those claims, any and all of which are fatal to Plaintiffs' effort to recover their $3.78 million claim. Moreover, Plaintiffs acknowledge they would not be prejudiced by an amendment adding affirmative defenses arising out of the Letter Agreement and 2003 Releases.

For all the reasons set forth below and those more fully discussed in Defendants' initial memorandum of law, Defendants respectfully submit that the Court overlooked facts and controlling law in finding that the Letter Agreement functioned as a re-assignment. Thus, Defendants' motion for partial summary judgment should instead be granted in its entirety.

## ARGUMENT

### I. EVEN READING THE RECORD IN THE LIGHT MOST FAVORABLE TO PLAINTIFFS, THE LETTER AGREEMENT WAS A RATIFICATION OF THIS ACTION BY THE REAL PARTY IN INTEREST, NOT A RE-ASSIGNMENT OF HIS CLAIMS

It is undisputed that Plaintiffs assigned to the Trustee their claims against the Dweck and Wolfson Defendants up to $3.78 million. It is also undisputed that in the Letter Agreement the Trustee "ratified" this action against Defendants. Plaintiffs previously argued that the ratification gave them the right to litigate the Trustee's claim on his behalf in this action. However, after the Court treated the Letter Agreement in which the Trustee ratified this action as a re-assignment of the claim (*see* Doc. 242-2), Plaintiffs jumped on the Court's characterization and now assert that the ratification was an assignment. (Pl. Br. at 8.)

Fed. R. Civ. P. 17(a)(3) explains the need for ratification where, as here, the claim is being pursued by someone other than the real party in interest:

> *Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or

3

be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

(Emphasis added.)

The plain language of the Letter Agreement establishes that it was a ratification only. The Letter Agreement (1) describes Plaintiffs' prior transfer of their claims to the Trustee as an "assignment," (2) describes the Trustee as an "assignee" of those claims, and (3) describes the action taken by the Trustee in the Letter Agreement as a "ratification." And it contains no language re-conveying those claims back to Plaintiffs:

> As the assignee of the claims of [Plaintiffs], to the extent of [$3.78 million], under the terms of the Release and Assignment, by [the Trustee's] signature on this letter, you thereby ***ratify*** the litigation by the Clients in [the present action] and ***you agree to be bound by all decisions*** of the Court in that action to the same extent that the Clients shall be bound.

(*See* Doc. 242-2 at 1 (emphasis supplied).)

To the contrary, the Letter Agreement uses the language required by case law applying Rule 17, i.e., that the real party in interest agrees to be bound by the Court's decision. *See, e.g.*, *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83 (2d Cir. 2013) (to ratify a suit, "the real party in interest must '(1) authorize continuation of the action and (2) agree to be bound by its result,'" *quoting ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir.1987) and *citing* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, 6A Fed. Prac. & Proc. § 1555 (3d ed. 2013).)

Thus, there is no basis to find that the Trustee and Plaintiffs' word choice was anything other than intentional, or that the parties intended anything more than a ratification—i.e., an authorization for Plaintiffs to proceed with the litigation of the $3.78 million claim on behalf of

the Trustee, with the Trustee retaining title to these claims up to $3.78 million.[2] Indeed, there would be *no point* in ratifying the action and agreeing to be bound by the Court's decision if Plaintiffs and Trustee did not consider the Trustee the real party in interest. The Trustee's subsequent release of any claims against Defendants along with his representation that he did not assign or transfer any claims, aligns with the plain language of the Letter Agreement. (*See* Doc. Nos. 245-2, 245-3.) Thus, the Letter Agreement was a ratification, and nothing more.[3]

None of the case law cited by Plaintiffs in their opposition is to the contrary. As Defendants argued in their opening memorandum, the Second Circuit rejected a broad reading of *Sprint* in *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) and *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 420 (2d Cir. 2015), both of which distinguished the legal impact of a power of attorney giving a party the right to sue on a claim it does not own, from an assignment of the claim to the party suing. Plaintiffs erroneously assert that *Fund Liquidation Holdings LLC v. Bank America Corp* "definitively rejected the argument advanced by Defendants" and "requires denial of Defendants' Motion." (*See* Pl. Mem. at 5-6.) Not so. *Fund Liquidation* limited the holding in *W.R. Huff* to the context of exactly what is present here: a party asserting standing to assert another entity's claim based on what amounts

---

[2] If by countersigning the Letter Agreement, the Trustee had intended to assign the present claims back to Plaintiffs, he would have had no need to "ratify" those claims or agree to be bound by this Court's decisions because Plaintiffs would have once again become the real parties in interest.

[3] Despite having entered into a ratification agreement premised on the Trustee being the real party in interest, Plaintiffs contend the Trustee never could have been the real party in interest because he never had "standing to pursue claims against Defendants for tortious conduct against Plaintiffs." *See* Opp. Br. at 3. Plaintiffs would be right if they had never assigned their claims to the Trustee. *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir.1991). The case law is clear that a Trustee can take assignment of common-law claims from the estate's creditors and pursue such claims. *See In re CBI Holding Co., Inc.*, 529 F.3d 432, 456–59 (2d Cir. 2008); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 987 F. Supp. 2d 311, 316–18 (S.D.N.Y. 2013). Thus, the facts and law confirm Trustee was the real party in interest when he ratified this action.

to a power of attorney, not an assignment, with no proprietary interest in the claim. 991 F.3d 370, 381-82 (2d Cir. 2021).

Thus, the law and facts make it abundantly clear the ratification of this action simply gave Plaintiffs the ability to litigate the Trustee's claims on his behalf and did not re-assign the claims. The trustee retained ownership of the claims and the right to release them, which he did in 2003.

II. **ONCE THE TRUSTEE RELEASED DEFENDANTS FROM ANY AND ALL CLAIMS, PLAINTIFFS' CLAIM TO RECOVER THE $3.78 MILLION FOR THE TRUSTEE BECAME MOOT.**

Plaintiffs argue that "standing is to be determined as of the commencement of suit" (Pl. Memo at 4, quoting *Fenstermaker v. Obama*, 354 F. App'x 245, 455 n.1 (2d Cir. 2009).) Thus, in Plaintiffs' view, Defendants cannot challenge standing based on changed circumstances during the litigation. That misstates the law.

Federal courts lack authority to issue advisory opinions, and, as such, Article III's "case or controversy" requirement applies throughout a litigation. When a dispute stops presenting a "case or controversy" for resolution, it becomes moot and must be dismissed. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-94 (2000) (discussing the relationship between standing and mootness); *see Altman v. Bedford Cent. Sch. Dist.,* 245 F.3d 49, 69 (2d Cir. 2001) (citing *Church of Scientology of California v. United States,* 506 U.S. 9, 12 (1992) (federal court lacks Article III jurisdiction to give opinions on moot questions)). Thus, Plaintiffs' admonition that courts must measure "standing" only at the start of a litigation is a semantic sleight of hand; whether the Court refers to the requirement as standing, mootness, or something else, this

Court can only resolve live "cases or controversies," a characteristic absent here as it pertains to the $3.78 million claim released by the Trustee.[4]

Though Plaintiffs possessed Article III standing at the beginning of this action, when they conveyed ownership of their $3.78 million claim to the Trustee in September 2000, the Trustee became the real party in interest for that claim. When the Trustee then ratified this action in the Letter Agreement, he simply authorized Plaintiffs to litigate the claims on his behalf, but retained the claims themselves. Consistent with this understanding, when the Trustee later settled his adversary proceedings against the Dweck and Wolfson Defendants for $800,000 and $90,000, respectively, he gave Defendants general releases and represented that he had not "sold, assigned, or transferred" any claim that could affect the 2003 Releases. (*See, e.g.*, Horowitz Decl., Exhibit H, Doc No. 245-3, ¶ 7.)

Once the Trustee, who continued to own legal title to the claim, settled with the Dweck and Wolfson Defendants, an Article III "case or controversy" no longer existed over the $3.78 million claims that he had taken by assignment from the Plaintiffs. At that point, whatever standing Plaintiffs originally had to assert those claims passed to Trustee, and that part of the case became moot. *See Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 399 (2d Cir. 1997) (settlement agreement moots controversy during appeal). It is fundamental that, because mootness undermines subject matter jurisdiction, any party or the Court may raise it at any stage of the proceedings. *See In re Kurtzman*, 194 F.3d 54, 58 (2d Cir. 1999).

---

[4] The issue in the cases Plaintiffs cite was whether there was standing at the start of the case, not whether the action stops presenting an actual case or controversy because of events occurring during the litigation.

### III. THERE IS NO BASIS TO NARROW THE SCOPE OF THE 2003 GENERAL RELEASES

Plaintiffs ask the Court to look beyond the four corners of the 2003 Releases and suggest that the Trustee did not intend to discharge the $3.78 million claim that Plaintiffs assigned to the Trustee. (Pl. Memo at 9-10). But in settling the adversary proceedings against the Dwecks and Wolfsons, the Trustee released Defendants from "any and all claims . . . whether known or unknown, from the beginning of the world to the date of this stipulation." (*See* Doc. No. 245-2 and 245-3 ¶ 4.) Nothing in the 2003 Releases suggests the Trustee intended to carve out the claim Plaintiffs assigned to him in 2000, and the Trustee's representation that he had not sold or transferred any claims demonstrates the Trustee did not intend the release to be limited to the claims he asserted in the adversary proceedings. Indeed, when the parties to the 2003 Releases intended to exclude any claims from the general release, they did so. (*See* Doc. 245-2 (excluding from the Dweck Defendants' general release of the Trustee "any unsecured nonpriority creditor claims and/or subordinated lender claims timely filed in the A.R. Baron and/or Baron Group proceedings and any claims asserted in the Chapter 7 proceedings of Andrew Bressman and Roman Okem").) Thus, the Court should disregard Plaintiffs' baseless attempt to narrow the scope of the 2003 Releases.

### IV. PLAINTIFFS' PROCEDURAL OBJECTIONS ARE UNFOUNDED

It is not an answer ("short" or otherwise) to this motion to say that the Dweck Defendants' Release is not "admissible." *See* Pl. Memo at 8. As reflected on the copies of the releases submitted to the Court, both Releases were "so ordered" by the Bankruptcy Judge at the close of the respective adversary proceedings and are therefore a matter of public record and enforceable. *See, e.g.*, *Gesualdi v. Fazio*, No. 16-cv-5209 (SJF), 2017 WL 8794775, at *3 (E.D.N.Y. Dec. 12,

2017), *report and recommendation adopted*, *Gesualdi v. Difazio,* 2018 WL 1202640 (E.D.N.Y. Mar. 8, 2018) (taking judicial notice of general release that had been filed with a court).

Nor should the Court penalize Defendants for not raising the 2003 Releases as an affirmative defense in their Answers. Quite the contrary: there was no occasion to refer to the 2003 Releases from the Trustee until Plaintiffs sandbagged Defendants by filing the Letter Agreement for the first time in November 2019, in opposition to Defendants' motion for partial summary judgment. Before then, Plaintiffs' receipt of the $3.78 million and assignment of their claims to the Trustee were sufficient to sustain Defendants' defenses of lack of standing, offset, and unjust enrichment.

Finally, Plaintiffs already conceded in their response to the Wolfson Defendants' original motion that they would not be prejudiced by an amendment of the Answer to add affirmative defenses: "*We do not argue prejudice would occur*. This action, despite its age, has not progressed even to the discovery stage." *See* ECF No. 243, Opp. Br. at 15 (emphasis added). Thus, not only should the Court permit the Wolfson Defendants to amend their Answer as proposed, but if it is necessary for the Dweck Defendants and the Wolfson Defendants to further amend their pleadings to add affirmative defenses based on the 2003 Releases or otherwise, the Court should permit Defendants to do so. [5]

---

[5] As needed to conform this motion for summary judgment (and this motion for reconsideration) to the evidence, it would be appropriate to consider the pleadings amended. "[A]bsent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Steinberg v. Columbia Pictures Indus., Inc.*, 663 F. Supp. 706, 715 (S.D.N.Y. 1987) (quotation omitted). And, in any event, to the extent required, Defendants reserve the right to move to amend their Answers to raise additional defenses that may arise. When, as here (and as noted in the Wolfson's initial motion to amend), the Court has not yet entered a Rule 16 case management plan with deadlines for the filing of amended pleadings and discovery has not taken place, it would be appropriate to permit amendment on motion without prejudice. *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 725 (2d Cir. 2010) (quotation omitted).

## CONCLUSION

Plaintiffs assigned their claims to the Trustee, who then ratified Plaintiffs' lawsuit, thus retaining title to those claims while ceding control of this litigation to Plaintiffs. In finding the Letter Agreement operated as a "re-assignment" of the Trustee's right to sue to Plaintiffs, the Court overlooked the legal effect of the ratification and binding Second Circuit law. Plaintiffs' claims to recover $3.78 million for the Trustee became moot when the Trustee released any and all claims he ever had against the Defendants. Thus, reconsideration is appropriate, and upon reconsideration, Defendants' motion for partial summary judgment should be granted.

Dated: New York, New York
      June 8, 2021

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Robert A. Horowitz*
Robert A. Horowitz
MetLife Building
200 Park Avenue
New York, New York
10166(212) 801-9200
horowitzr@gtlaw.com

*Attorneys for the Dweck Defendants*

MINTZ & GOLD LLP

*/s/ Ira Lee Sorkin*
Ira Lee Sorkin, Esq.
Terence W. McCormick, Esq.
600 Third Ave., 25th Floor
New York, New York 10016
(212) 696-4848
sorkin@mintzandgold.com
mccormick@mintzandgold.com

*Attorneys for the Wolfson Defendants*