UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MOHAMMED FEZZANI, *et al.*,

                Plaintiffs,        99 Civ. 0793 (PAC)

-against-       **OPINION & ORDER**

BEAR, STEARNS & COMPANY INC., *et al.*,

                Defendants.
------------------------------------------------------------X

      In the latest twist in this decades-long litigation vortex, Defendants have moved for dismissal for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure.[1] At the heart of their motions is a repackaging of an argument the Court has already rejected: that Plaintiffs purportedly lack Article III standing to pursue a portion of their claims—specifically, $3.8 million recovered in the year 2000 from a restitution fund formed as a part of the SEC's settlement with Bear Stearns[2]—in federal court.

      For the reasons set forth below, the motion is **DENIED**.

## **BACKGROUND**

      Familiarity with the factual and lengthy procedural background of this action is presumed. Defendants most recently argued that Plaintiffs lack Article III standing as to the already-recovered

---

[1] The two remaining sets of Defendants—the Dweck Defendants and the Wolfson Defendants—have filed separate motions (*see* ECF Nos. 331, 334), briefed in coordination, seeking identical relief under Rule 12(h)(3), which provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see Brown v. Campbell*, No. 21-cv-10276 (LTS), 2022 WL 279868, at *1 (S.D.N.Y. Jan. 31, 2022) ("Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists . . . .") (internal quotations omitted).

[2] As the Court has previously noted, two individual plaintiffs did not recover any funds from the Restitution Fund. *See Fezzani v. Bear, Stearns & Co. Inc.*, No. 99-cv-0793 (PAC), 2021 WL 1758897, at *2 n.4 (S.D.N.Y. May 4, 2021).

1

$3.8 million in a motion for reconsideration of the Court's disposal of Defendants' prior bid for partial summary judgment. *See Fezzani v. Bear, Stearns & Co. Inc.*, No. 99-cv-0793 (PAC), 2021 WL 1758897 (S.D.N.Y. May 4, 2021), *reconsideration denied*, No. 99-cv-0793 (PAC), 2021 WL 3115449 (S.D.N.Y. July 21, 2021).

The Court denied both motions, holding in relevant part that Plaintiffs had established standing to bring these claims in federal court. Central to that holding was the Court's conclusion that, although Plaintiffs had initially assigned their right to sue for the already-recovered $3.8 million to the SIPC Trustee, this assignment had been supplanted by a subsequent agreement (the "Letter Agreement") which "had the legal effect of *re-assigning* Plaintiffs their right to sue for the $3.8 million in exchange for their promise to remit that amount to the SIPC Trustee." *Fezzani*, 2021 WL 1758897, at *3. Thus, because Plaintiffs were assignees of a legal claim to sue, they had standing to pursue that claim under the Supreme Court's decision in *Sprint Communications v. APCC Services*, 554 U.S. 269, 271 (2008) (holding that an "assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor"). The Court reiterated this conclusion in its denial of Defendants' reconsideration motion, noting that it had "already resolved the issue of what legal consequence the Letter Agreement had on the parties." *Fezzani*, 2021 WL 3115449, at *1.

## DISCUSSION

### A. Article III Standing

In their instant motions, Defendants once again invite the Court to rethink its standing analysis. The Court again declines to do so.

For their part, Defendants insist they are not asking the Court to revisit what they construe as the Court's prior orders interpreting the *terms* of the Letter Agreement, but rather to assess the

2

"legal effect" of the agreement *itself*. (*See* Wolfson Mem. at 4, ECF No. 335.) But the Court's prior orders did not merely interpret the terms of the Letter Agreement; they declared its "legal effect," applying governing New York contract law in full view of the procedural twists and turns that led the parties to this point. *Fezzani*, 2021 WL 1758897, at *3. In substance, then, if not in style, Defendants ask the Court to *again* reconsider its conclusion that Plaintiffs have Article III standing to pursue these claims. As the Court already noted in its previous ruling, reconsideration is an "extraordinary remedy," *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 328 (S.D.N.Y. 2020) (internal citations omitted), that should be denied absent "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Liberty Mut. Fire Ins. Co. v. J&S Supply Corp.*, No. 13-cv-4784 (VSB), 2017 WL 4351523, at *1 (S.D.N.Y. Sept. 29, 2017). It is "not a vehicle for presenting the case under new theories or otherwise taking a second bite at the apple"—or, in this case, a third. *Dardha v. Costco Wholesale Corp.*, No. 17-cv-2571 (NSR), 2019 WL 1416987, at *1 (S.D.N.Y. Mar. 28, 2019) (cleaned up).

Defendants' motions fail this test. Their characterization of the circumstances surrounding the Letter Agreement's formation was already conveyed to the Court in their briefing of the original summary judgment motion (*see* Defs.' Rep. at 2–3, ECF No. 244; Ex. G, ECF No. 245-2; Ex. H, ECF No. 245-3) and the first motion for reconsideration (*see* Defs.' Mem. at 2–4, ECF No. 254). Accordingly, the instant motions do not present meaningful new evidence to the Court;[3]

---

[3] The only "new" (at least to this docket) evidence of any arguable significance is the Bankruptcy Court's 1999 Restitution Fund Stipulation and Order, which the parties had alluded to, but had not presented in full to the Court. (*See* Ex. C, ECF No. 332-3; Ex. D, ECF No. 332-4.) Defendants now point to provisions of the Stipulation and Order, along with portions of the Bankruptcy Code, to argue that because the Letter Agreement was purportedly executed without court approval, it is void and unenforceable. But as explained *infra*, this implicates disputed facts that bear on Plaintiffs' contractual, not Article III, standing.

3

rather, they re-weave the same factual threads into new theories that could have been asserted earlier and are in any event, as discussed *infra*, unavailing. Defendants have therefore failed to clear the high bar for reconsideration, and their motions fail for this reason alone.

But even reviewing Defendants' new theories *de novo*, the Court deems them an unpersuasive attempt to dress a merits dispute in Article III clothing. For purposes of this motion, Defendants concede that, if enforceable, the Letter Agreement affords Plaintiffs standing to pursue their claims in federal court. Instead, they now argue that because standing is founded upon the Letter Agreement, and because the factual circumstances surrounding the Letter Agreement's formation render it void and unenforceable, Plaintiffs cannot have standing.

This is a merits question. Plaintiffs claim to have a contractual right to pursue these claims; Defendants claim that right is unenforceable based on facts that the parties dispute, including the extent to which notice of the Letter Agreement was given during proceedings before the Bankruptcy Court. In short, the parties dispute *contractual* standing, an inquiry that is "distinct from *Article III* standing and [that] does not implicate subject-matter jurisdiction." *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) (emphasis added). Fact-dependent questions falling under the umbrella of contractual standing include "whether a party has the right to enforce a contract" and indeed "the existence of a contract" in the first place. *Id.* at 211–12; *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 975 F.3d 770, 776 n.4 (9th Cir. 2020) ("[W]hether Claimants possess legally enforceable rights under the settlement agreement is a question of the merits rather than one of constitutional standing."); *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 11 F.4th 345, 350 (5th Cir. 2021) ("[S]uch questions do not go to the court's subject matter jurisdiction, but are instead part of the inquiry into the merits of a particular claim.") (unrelated subsequent history omitted). That Defendants "might have a defense"

4

against the enforceability of the Letter Agreement—including, as they contend, and as Plaintiffs dispute as a matter of fact, that notice of the Letter Agreement was withheld—"does not change this result."[4] *See SM Kids*, 963 F.3d at 211.

Although Defendants are correct that this distinction typically arises in the breach of contract context, rather than where a third party claims a contract is void, the underlying concerns are the same in either scenario: Defendants' proposed approach would, in effect, cause federal courts to lose jurisdiction over a claim based on the substantive, fact-dependent defense that an underlying assignment contract is unenforceable.[5] The Second Circuit has "cautioned" against entertaining such theories that would operate to "collapse" standing analysis into litigating the fact-dependent merits of asserted contractual rights. *SM Kids*, 963 F.3d 206, 212 (quoting *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003)).

---

[4] This is not inconsistent with the Supreme Court's holding in *Sprint*, where the existence of an enforceable assignment agreement was not at issue. *See* 554 U.S. at 271–72. Here, unlike in *Sprint*, the lynchpin of Defendants' argument is not that the terms of the Letter Agreement compel Plaintiffs to remit damages secured in this action to the SIPC Trustee (raising redressability concerns), but rather that there is no enforceable agreement to begin with (raising contractual standing concerns).

[5] Defendants are also correct that courts have at times held that plaintiffs lack Article III standing after finding assignments invalid as a matter of *law*. To that end, importantly, none of the cases Defendants cite involved any genuine *factual* disputes bearing on the assignment contract's validity. *See Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, No. 20-1312-CV, 2021 WL 4515256, at *1 (2d Cir. Oct. 4, 2021) (summary order) (affirming the district court's grant of summary judgment based on the district court's ruling that "factual findings" that there was no genuine dispute that the underlying assignments were barred under New York's champerty statute); *US Fax L. Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1119 (10th Cir. 2007) (affirming the district court's dismissal of plaintiff's complaint because the underlying claims, as alleged, were unassignable as a matter of Colorado law); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019) (affirming the district court's dismissal of plaintiff's complaint because the assignor had no rights to assign to plaintiffs in the first place as a matter of state law); *MSP Recovery, LLC v. Allstate Ins. Co.*, 276 F. Supp. 3d 1311, 1315–17 (S.D. Fla. 2017) (dismissing plaintiff's claims because the underlying assignment, as alleged in the complaint, was invalid as a matter of law).

Thus, because Defendants' arguments implicate issues of fact that speak to contractual, not Article III, standing, they cannot sustain a motion for dismissal on subject matter jurisdiction grounds.

**B. Waiver**

Having addressed the substance of Defendants' motions, the Court turns next to their procedural posture. Midway through this action's third decade, this is the third set of motions in three years (and the second in less than one year) in which Defendants have asked this Court to address the same threshold issue: Plaintiffs' Article III standing. Despite these repeated opportunities, and despite the reality that the relevant events—and any supporting evidence probative of disputed underlying facts, such as the role the Letter Agreement played in proceedings before the Bankruptcy Court—date back to the turn of millennium, the instant motions represent the first time Defendants have asserted these arguments. Defendants have only briefly gestured at a purported justification for this delay.[6]

Accordingly, should Defendants wish to assert a defense founded upon Plaintiffs' lack of contractual standing in a future dispositive motion, including another motion to reconsider (whether or not it is styled as such), Defendants are directed to show cause why the argument should not be deemed waived. *See Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 176 (2d Cir. 2014) ("[A] party may waive an argument by failing to raise it in a timely manner,

---

[6] In a separate motion seeking to amend their pleadings, Defendants asserted that they could not have raised any arguments with respect to the Letter Agreement until December 2019, which they represented was the first time Plaintiffs disclosed its existence. (*See* ECF No. 297 at 2.) But Defendants have offered no explanation for declining to raise these arguments at that time, instead suggesting that they "did not become ripe" until *after* this Court's partial summary judgment and reconsideration orders. (*See id.*) Whether this was indeed true in the context of the motions to amend their pleadings, the Court is hard-pressed to understand how Defendants could justify withholding any arguments concerning the Letter Agreement—the centerpiece of their summary judgment motion—until after the Court had already ruled on summary judgment twice.

6

making consideration of that argument by the district court inappropriate in certain circumstances...."); *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015) ("[A]rguments... raised for the first time in plaintiffs' motion for reconsideration... were not properly presented to the district court.").

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rule 12(h)(3) are denied.[7] The Clerk of the Court is directed to terminate the motions at ECF Nos. 331 and 334.

Dated: New York, New York
March 31, 2022

SO ORDERED

*/s/ Paul A. Crotty*
HONORABLE PAUL A. CROTTY
United States District Judge

---

[7] Although, in their letters to the Court, Defendants had initially advertised that they also intended to move under Rule 12(c) of the Federal Rules of Civil Procedure (*see* ECF Nos. 313, 314), neither the actual motions nor the accompanying briefing refer to Rule 12(c).

7