UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MOHAMMED FEZZANI, *et al.*,      :

              :

       Plaintiffs,    :    99 Civ. 0793 (PAC)

              :

  -against-        :    **OPINION & ORDER**

              :

BEAR, STEARNS & COMPANY INC., *et al.*,  :

              :

       Defendants.   :

------------------------------------------------------------------X

   Before this Court are a plethora of motions in a case spanning over two decades. The remaining Defendants in this case—the Dweck Defendants[1] and the Wolfson Defendants[2] (collectively, "Defendants")—object to Magistrate Judge James L. Cott's Opinion and Order denying their motion to amend their answer. Defendants further request this Court certify an interlocutory appeal of its Opinion and Order regarding its motion to dismiss for lack of subject-matter jurisdiction. Defendants also move to dismiss several parties from the case pursuant to Federal Rule of Civil Procedure 25: Defendant Abraham Wolfson; Plaintiffs Lester Blank, Adam Cung, and Dr. Victoria Blank (collectively, "Deceased Plaintiffs"); and Plaintiffs the Bootlesville Trust and Cirenaca Foundation (collectively, "Entity Plaintiffs"). Plaintiffs oppose these motions and cross move to substitute all deceased parties pursuant to Rule 25. The Court **AFFIRMS** Judge Cott's order; **DENIES** Defendants' request for certification of an interlocutory appeal; **GRANTS**

---

[1] Isaac R. Dweck, individually and as custodian for Nathan Dweck, Barbara Dweck, Morris I. Dweck, Ralph I. Dweck, and Jack Dweck.

[2] Morris Wolfson, Aaron Wolfson, and the estate of Abraham Wolfson.

**IN PART** and **DENIES IN PART** Defendants' motions to dismiss certain parties; and **DENIES** Plaintiffs' cross motions to substitute.[3]

## BACKGROUND

The facts of this case are well worn at this point. From May 1992 until July 1996, A.R. Baron and its officers, employees, and co-conspirators perpetuated a massive securities fraud scheme. *Fezzani v. Bear, Stearns & Co. Inc.* ("*Fezzani XVI*"), No. 99 CIV. 0793 (PAC), 2021 WL 1758897, at *1 (S.D.N.Y. May 4, 2021), *reconsideration denied*, No. 99 CIV. 0793 (PAC), 2021 WL 3115449 (S.D.N.Y. July 21, 2021). Plaintiffs were Baron customers during the relevant time period and commenced this action in 1999 against eleven organizations and individuals for their alleged participation in the scheme. *Id.* After 24 years, full bankruptcy proceedings, the convictions of Baron and its officers, and a seemingly endless barrage of litigation, the Wolfson Defendants and the Dweck Defendants are the sole remaining Defendants in this case.

Highly relevant to several of the pending motions are the bankruptcy proceedings related to this case. In 1999, Bear Stearns Securities Corporation settled with the Securities Exchange Commission ("SEC") and the New York County District Attorney, culminating in Bear Stearns contributing $30 million to a restitution fund. *Id.* A Securities Investor Protection Corporation Trustee ("SIPC Trustee") was established to facilitate distribution to affected customers, including Plaintiffs. *Id.* In September 2000, Plaintiffs collectively recovered approximately $3.8 million in restitution funds. *Id.* at *2. In tandem with this recovery, Plaintiffs entered an agreement with the SIPC Trustee, in which (1) each Plaintiff assigned their rights to the SIPC Trustee "to the extent of the Consideration" received; and (2) the consideration would operate as a "setoff against a

---

[3] Also pending is Defendants' motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). ECF No. 435. The Court reserves judgment on this motion.

judgment or award Claimant may obtain against any third party." *Id.* A few days later on September 13, 2000, Plaintiffs and the SIPC Trustee entered into another agreement ("Letter Agreement"). *Id.* "The Letter Agreement acknowledged Plaintiffs' Release Agreement with the SIPC Trustee as well as their recovery from the Restitution Fund. The Letter Agreement stated, however, that the SIPC Trustee would 'ratify' the present action before this Court and be bound by all its decisions. And in exchange for the SIPC Trustee's cooperation, Plaintiffs agreed to pay back their earlier recovery of $3.8 million (less any litigation costs incurred) should they prevail in the instant action." *Id.* (internal citations omitted). In 2003, the Wolfson and Dweck Defendants each settled their claims with the SIPC Trustee separately, and the Trustee released all claims against Defendants. *Id.*

In 2019, Defendants moved for partial summary judgment, alleging that the Trustee never reassigned Plaintiffs their rights, and in the alternative moved to amend their answer to add defenses regarding the lack of reassignment. *Id.* On May 4, 2021, the Court denied both motions, holding that the Letter Agreement was a valid assignment of the claims for both the purposes of standing and diminution of damages. *Id.* at *4. The Court held that amendment of the complaint was rendered moot in light of its decision. *Id.*

Defendants moved for reconsideration of the Court's decision, which the Court denied on July 21, 2021. *Fezzani v. Bear, Stearns & Co. Inc.* ("*Fezzani XVII*"), No. 99 CIV. 0793 (PAC), 2021 WL 3115449, at *1 (S.D.N.Y. July 21, 2021). Defendants then moved to amend their answer to add defenses related to the Letter Agreement and standing, a motion that was referred to Magistrate Judge James L. Cott. *Fezzani v. Bear, Stearns & Co., Inc.* ("*Fezzani XVIII*"), No. 99 CIV. 0793 (PAC)(JLC), 2022 WL 782751, at *2 (S.D.N.Y. Mar. 15, 2022). Before that motion was resolved, Defendants also moved before this Court to dismiss for lack of subject-matter

3

jurisdiction, arguing Plaintiffs lacked standing due to an improper assignment through the Letter Agreement. *See Fezzani v. Bear, Stearns & Co. Inc.* ("*Fezzani XIX*"), No. 99 CIV. 0793 (PAC), 2022 WL 974169, at *1 (S.D.N.Y. Mar. 31, 2022). On March 15, 2022, Judge Cott denied the motion to amend, finding this Court already decided the legal significance of the Letter Agreement as the law of the case. *Fezzani XVIII*, 2022 WL 782751, at *3. Defendants have objected to this denial. ECF No. 353. On March 31, 2022, the Court denied the motion to dismiss, and also warned Defendants that any further attempt to amend their answer may have been waived. *Fezzani XIX*, 2022 WL 974169, at *4. Defendants requested a certificate to file an interlocutory appeal regarding this opinion. ECF No. 355.

Separately, during the pendency of this matter, several parties have passed away. Plaintiff Lester Blank passed away on October 23, 2007[4]; Plaintiff Adam Cung passed away in 2016[5]; Plaintiff Dr. Victoria Blank passed away in December 2022[6]; and Defendant Abraham Wolfson passed away in 2021.[7] Thus, Defendants have moved to dismiss Defendant Abraham Wolfson and the Deceased Plaintiffs. ECF Nos. 395, 435. In response, Plaintiffs filed cross motions to substitute the estates of these parties into the action. ECF Nos. 400, 451. Defendants have also move to dismiss the Entity Plaintiffs as both have been dissolved. ECF No. 435.

---

[4] ECF No. 445 at 3.

[5] *Id.* at 4 (citing ECF No. 442-1).

[6] *Id.* at 7.

[7] ECF No. 405 at 4.

## DISCUSSION

### 1. Judge Cott's Order is Affirmed

In his March 15, 2022, Order, Judge Cott ruled that "[t]he previous law of this case has rendered the proposed affirmative defense of 'release' untenable." *Fezzani XVIII*, 2022 WL 782751, at *3. The Court reviews Judge Cott's opinion regarding his analysis under the law of the case doctrine as to whether it is "clearly erroneous or is contrary to law."[8] Fed. R. Civ. P. 72(a). "An order is 'clearly erroneous only when the reviewing court, based on the entire evidence, is left with the definite and firm conviction that a mistake has been committed,' and an order is 'contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *E.E.O.C. v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004) (quoting *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 320–21 (S.D.N.Y.2001)) (brackets omitted). "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (quotations omitted). "The law of the case doctrine instructs 'when a court has ruled on an issue, that decision should generally be adhered to by that

---

[8] Despite Defendants' argument to the contrary, the standard of review for Judge Cott's opinion is far from clear. Although it has not explicitly ruled on the matter, the Second Circuit has suggested that motions to amend are non-dispositive. *See, e.g., Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Kilcullen v. N.Y. State Dep't of Transp.*, 55 Fed. App'x 583, 584 (2d Cir. 2003). Some courts in this Circuit have interpreted *Fielding* as only applying to motions to amend where amendment would not foreclose potential claims. *See, e.g., Lubavitch of Old Westbury, Inc. v. Inc. Vill. of Old Westbury, New York*, No. 08-CV-5081(DRH)(ARL), 2021 WL 4472852, at *9 (E.D.N.Y. Sept. 30, 2021). However, "the 'weight of authority' within this Circuit classifies a motion to amend a pleading as non-dispositive," even on grounds of futility. *Patrick v. Loc. 51, Am. Postal Workers Union, AFL-CIO*, No. 19-CV-10715 (NSR), 2021 WL 5106638, at *2 n.2 (S.D.N.Y. Nov. 3, 2021) (quoting *Rivers v. New York City Hous. Auth.*, 11-CV-5065 (KAM) (MDG), 2014 WL 12829494 (E.D.N.Y. Nov. 17, 2014)); *see also Xie v. JPMorgan Chase Short-Term Disability Plan*, No. 15 CIV. 4546 (LGS), 2018 WL 501605, at *1 (S.D.N.Y. Jan. 19, 2018). The Court joins the majority in reviewing Judge Cott's order under a "clearly erroneous" standard pursuant to Federal Rule of Civil Procedure 72(a).

court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise.'" *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 112 (S.D.N.Y. 2010) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir.2002)).

   Judge Cott relied upon the Court's July 2022 opinion in finding that the Letter Agreement was a valid assignment as a matter of law. *Fezzani XVIII*, 2022 WL 782751, at *3. This is a correct reading of both of the Court's May and July 2021 opinions. In the May 4, 2021, opinion, the Court expressly held that, "under New York Law, the Letter Agreement effectuated a valid re-assignment of Plaintiffs' right to sue for the $3.8 million." *Fezzani XVI*, 2021 WL 1758897, at *3. Resulting from this holding, the Court denied both the motion for partial summary judgment and the Wolfson Defendants' motion to amend their answer to incorporate the arguments as defenses. *Fezzani XVI*, 2021 WL 1758897, at *4. In its July 21, 2021, Order, the Court confirmed that it "already resolved the issue of what legal consequence the Letter Agreement had on the parties." *Fezzani XVII*, 2021 WL 3115449, at *1 (emphasis added). Judge Cott correctly acknowledged this determination as one of law. *Fezzani XVIII*, 2022 WL 782751, at *3; *see Bethlehem Steel Co. v. Turner Const. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957) (noting that unambiguous contract terms are a question of law). The use of the law of the case doctrine was thus not "clearly erroneous," and was appropriate as applied to a denial of summary judgment. *See Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, No. 11 CIV. 3130 JSR, 2013 WL 342693, at *3 (S.D.N.Y. Jan. 29, 2013) (applying the law of the case doctrine to a contract interpretation in a denial of summary judgment).

   The Court's March 31, 2022, opinion does not help Defendants in this regard. On Defendants' motion to dismiss, they argued that the Letter Agreement lacked "legal effect" because it was never approved by the bankruptcy court. *Fezzani XIX*, 2022 WL 974169, at *1–2. The Court primarily denied the motion on the grounds that Defendants were once again effectively

moving for reconsideration of prior Orders and noted that Defendants were attempting to "re-weave the same factual threads into new theories that could have been asserted earlier . . . ." *Id.* at 2. The Court held that, on those grounds alone, the motion failed. *Id.* While the Court elaborated on Defendants' newly crafted arguments and found them to be deficient as jurisdictional arguments, *id* at *3, this belt and suspenders approach does not detract from the Court's prior legal holding about the validity of the Letter Agreement. Further, Defendants did not even *raise* an amendment regarding the "legal effect" of the Letter Agreement before Judge Cott; rather they only raised that "release" was appropriate because of the 2003 bankruptcy settlement order. The amendments, as proposed before Judge Cott, had nothing to do with the alleged lack of ratification. *Fezzani XVIII*, 2022 WL 782751, at *3. The issues actually before Judge Cott were squarely decided by this Court twice, and he was therefore bound by the Court's prior rulings.

In any event, even if Judge Cott's ruling were erroneous (and it is not), Defendants' challenge would still fail because they have waived their argument in favor of amendment regarding the validity of the Letter Agreement. "[A] party may waive an argument by failing to raise it in a timely manner, making consideration of that argument by the district court inappropriate in certain circumstances . . . ." *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.,* 762 F.3d 165, 176 (2d Cir. 2014). Even putting aside Defendants' failure to raise *any* assignment issues regarding the bankruptcy settlement for nearly 20 years,[9] Defendants already had the opportunity to raise the invalid assignment as an affirmative defense, including during summary judgment practice in 2019 and again  during their reconsideration practice in 2021. Indeed, the Court placed Defendants on notice of this exact waiver issue in its March 31, 2022, opinion,

---

[9] "[I]t is manifest that the risk of substantial prejudice increases in proportion to the length of the defendant's delay in seeking the amendment." *Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152, 1155 (2d Cir.1968).

directing them to "show cause why the argument should not be deemed waived." *Fezzani XIX*, 2022 WL 974169, at *4.

      Defendants gesture at the idea that, because Plaintiffs only produced the Letter Agreement in 2019, they somehow have not waived their argument during the following four years.[10] But Defendants do not explain why they failed to raise every argument regarding affirmative defenses to the Letter Agreement in their reconsideration motion, particularly where the Court already denied a motion to amend. *See EMA Fin., LLC v. AppTech Corp.*, No. 21-CV-6049 (LJL), 2022 WL 17352437, at *6 n.4 (S.D.N.Y. Dec. 1, 2022) (deeming affirmative defenses waived where the plaintiff failed to raise them in multiple briefs). Further, Defendants continued their practice of failing to argue all potential affirmative defenses before Judge Cott, as they filed yet another motion to dismiss on a separate theory regarding the Letter Agreement *while the motion to amend was pending before Judge Cott. Fezzani XVIII*, 2022 WL 782751, at *2. Despite once again creating the opportunity for themselves to bring the affirmative defense to Judge Cott's attention, Defendants failed, yet again, to do so. Contrary to what appears to be their assumption, Defendants do not have an unlimited capacity to file repetitive motions, repurposing arguments to address the same issue over and over again. *See Sharp v. Ally Fin., Inc.,* 328 F. Supp. 3d 81, 105 (W.D.N.Y. 2018) ("It is well-established in this Circuit that new arguments raised in successive briefing papers will not be considered where those arguments could have been raised in a previous submission."). Thus, the Court remains "hard-pressed to understand how Defendants could justify withholding any arguments concerning the Letter Agreement—the centerpiece of their summary judgment motion—until after the Court had already ruled on summary judgment twice." *Fezzani*

---

[10] ECF No. 361 at 10–11.

*XIX*, 2022 WL 974169, at *4 n.6.[11]   The Court therefore affirms Judge Cott's sound and well-reasoned Order rejecting Defendant's attempts to relitigate settled issues in this case.

### 2. Defendants Are Not Entitled to an Interlocutory Appeal

Defendants also request a certificate of appealability regarding the Court's March 31, 2022, opinion rejecting their premise that Plaintiffs lack Article III standing.  "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances to overcome the general aversion to piecemeal litigation[.]"  *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (quotations omitted).  An interlocutory appeal may be appropriate where "the moving party shows that the order (1) 'involves a controlling question of law' about which (2) 'there is substantial ground for difference of opinion,' and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'"  *In re Barclays Liquidity Cross & High Frequency Trading Litig.*, No. 14-MD-2589 (JMF), 2019 WL 3202745, at *1 (S.D.N.Y. July 16, 2019) (quoting 28 U.S.C. § 1292(b)).  "However, while the absence of any of the foregoing three elements is sufficient to deny a motion to certify an interlocutory appeal, the presence of the foregoing elements does not mandate granting the motion."  *Hymes v. Bank of Am.*, N.A., No. 18-CV-2352 (RRM)(ARL), 2020 WL 9174972, at *3 (E.D.N.Y. Sept. 29, 2020) (citations omitted).  "Certification of an interlocutory appeal is a rare exception to the rule that only final judgments are appealable."  *Armstrong v. Collins*, No. 01 CIV. 2437 PAC, 2011 WL 308260, at *2 (S.D.N.Y. Jan. 31, 2011).

The Court rejects Defendant's application for a certificate of appealability.  Even if an issue of standing presents a controlling question of law, *see Barclays*, 2019 WL 3202745, at *2, the Court

---

[11]  In light of this waiver, the Court also denies Defendant's motion to supplement as moot.  ECF No. 384.

fails to see how another appeal in this case would materially advance the ultimate termination of this litigation. Rather, an interlocutory appeal at this stage of the proceedings directly implicates a deeply established concern regarding interlocutory appeals: piecemeal, inefficient litigation. *See at In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 533 (S.D.N.Y. 2014) (collecting cases articulating the importance of judicial efficiency with respect to interlocutory appeals); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98 CIV. 3099 (JGK), 2001 WL 585541, at \*3 (S.D.N.Y. May 31, 2001) ("[T]he fairest and most expeditious way to resolve all the complicated issues in this case is to set the case down for trial, resolve all pending claims after which a single appeal to the Court of Appeals may be asserted by any party."). It is unclear how the Court could more clearly state the issue: the parties have had the opportunity to raise arguments regarding the Letter Agreement multiple times in the last four years and both this Court and Judge Cott have rejected Defendants' arguments to the contrary. The Court's opinion has not changed. This case has been unusually drawn out and has already gone up on appeal multiple times. *See, e.g., Fezzani v. Dweck*, 779 F. App'x 815 (2d Cir. 2019); *Fezzani v. Bear, Stearns & Co. Inc.*, 716 F.3d 18 (2d Cir. 2013). The Court will not prolong this case any further and likewise will not issue a certificate of appealability.

### 3. Deceased Parties[12]

Next, the Court addresses the numerous parties that have passed away during the pendency of this decades-old litigation. Defendant seeks to dismiss one Defendant and several Plaintiffs, while Plaintiffs seek to substitute the estates of those parties. Defendant Abraham Wolfson and Plaintiffs Lester Blank, Adam Cung, and Dr. Victoria Blank have all passed away during the

---

[12] The Court acknowledges that only the Wolfson Defendants request the dismissal of Abraham Wolfson. ECF No. 395. There is nevertheless a large overlap in the applicable law, so the Court addresses the two motions simultaneously.

pendency of this litigation and the Entity Plaintiffs were both dissolved.[13]  Thus, Defendants'

motions to dismiss are governed by Federal Rule of Civil Procedure 25.[14]

"If a party dies and the claim is not extinguished, the court may order substitution of the

proper party. A motion for substitution may be made by any party or by the decedent's successor

or representative." Fed. R. Civ. P. 25(a)(1). Here, as a preliminary matter, death did not extinguish

Plaintiffs' claims. "Where a litigant's claim has its origins in state law, then it follows that the

claim would survive the litigant's death if the applicable state law creates a right of survival." *Off.

Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475 (JS)(AKT),

2017 WL 9485707, at *3 (E.D.N.Y. Aug. 3, 2017) (quotations omitted), *report and

recommendation adopted sub nom. Off. Comm. of Unsecured Creditors of Exeter Holding, Ltd. v.

Haltman*, No. 13-CV-5475 (JS)(AKT), 2017 WL 3981299 (E.D.N.Y. Sept. 11, 2017).  Under New

York law, causes of action for injury to person or property survive when a party dies. N.Y. Est.

Powers & Trusts Law § 11-3.2.  As Plaintiffs allege injuries to their property, their claims survive.

---

[13] The parties do not dispute that the Entity Plaintiffs are now dissolved, but the record is somewhat unclear as to *when* exactly each entity dissolved. *See, e.g.*, Patrick Burgess Dep. Tr. 11/09/2022, 27:18–25 ("I cannot give you an accurate date [the Bootlesville Trust dissolved], but I think it would have been in the 1990s, or perhaps very early in the 2000s, but I think in the 1990s."). While far from definite, the deposition testimony presented to the Court indicates that both Entity Plaintiffs were in existence when this litigation commenced. *See* Patrick Burgess Dep. Tr., 326:18–327:7 (noting the Bootlesville Trust was still in existence on September 12, 2000); Mohamed Fezzani Dep. Tr., 34:7–12 (determining the Cirenaca Foundation was closed approximately ten years ago). Based on this evidence and the fact that the parties do not seem to dispute it, the Court finds that, for the sake of this motion, both Entity Plaintiffs were dissolved after the commencement of this litigation.

[14] Defendants make multiple arguments about the futility of substituting parties, focusing in part on the scarcity of admissible evidence to prove Plaintiffs' claims. The Court declines to address merits-based arguments, as Rule 25 is an inherently procedural device. *See* Wright & Miller, § 1956 Death—Mechanics of Substitution, 7C Fed. Prac. & Proc. Civ. § 1956 (3d ed.) ("The court will not resolve the merits of the controversy in passing on a motion for substitution."). Such arguments are best left to summary judgment.

*See Haltman*, 2017 WL 9485707, at *3 (holding common law claims grounded in fraud survive the death of a litigant).

At issue here is whether Plaintiffs failed to, in a timely manner, move to substitute the deceased parties. "If [a] motion [to substitute] is not made within 90 days after service of a statement noting the death [of the party], the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1). While not a jurisdictional bar, Rule 25 dictates that a Court is required to dismiss a deceased party absent a timely substitution. *See Martinez v. 35-50 81st St. Realty LLC*, No. 20-CV-3167 (MKB)(SJB), 2021 WL 2856720, at *1 (E.D.N.Y. July 8, 2021).

First, the Court denies the motion to dismiss Abraham Wolfson in this case because Defendants failed to make a formal statement of death. "[T]he statement noting the death of a party . . . must be a formal, written document that is both served on the appropriate persons and filed with the court." 6 Moore's Federal Practice - Civil § 25.13 (2023). The 90-day clock on a motion for substitution does not begin to run until that formal statement. *Mandarino v. Mandarino*, 257 F.R.D. 394, 395 (S.D.N.Y. 2009). This version of Rule 25(a)(1) replaces a previous, inflexible version of the rule that required "an action be dismissed as to a deceased party if substitution [was] not carried out within a fixed period measured from the time of the death." *Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 469 (2d Cir. 1998). The current more forgiving iteration is "designed to prevent a situation in which a case is dismissed because a party never learned of the death of an opposing party." *Id.* at 469–70.

In arguing that they provided adequate notice, Defendants point to a handful of footnotes in letters and docket entries acknowledging Abraham Wolfson's passing. ECF No. 405 at 2 n.4, 3. These entries, however, are insufficient, as they constitute no more than "simple statement[s] that a party has died." *O'Rourke v. Drunken Chicken in NY Corp.*, No. 19 CV 3942 (NGG)(LB), 2021

WL 1394176, at *3 (E.D.N.Y. Feb. 26, 2021), *report and recommendation adopted*, No. 19 CV 3942 (NGG)(LB), 2021 WL 973086 (E.D.N.Y. Mar. 16, 2021).   Further, neither Plaintiffs' knowledge of Defendant Wolfson's death nor the mentions of the death in court proceedings cures Defendants' failure to provide formal notice as required under Rule 25(a). *Haltman*, 2017 WL 9485707, at *5.  Thus, without formal notice, Defendants' motion fails and Plaintiffs' motion for substitution is timely.

Defendants rely on a misreading of Second Circuit case law to support their arguments.  In *Unicorn Tales*, 138 F.3d at 470, the Second Circuit dismissed a deceased defendant and denied a motion for substitution where the defendant's surviving spouse filed a statement of death on the docket and subsequently moved to dismiss when 90 days had passed. *Id.* at 469.  The court held that a statement of fact of death (1) need not be filed by a party or formal representative and (2) need not identify a legal representative or successor. *Id.* at 469–70.  The court did not, however, address whether a formal notice *itself* must be issued under Rule 25.  *Unicorn Tales* remains consistent with other precedent emphasizing the importance of formal notice.  *See, e.g.,* *Mandarino,* 257 F.R.D. at 395 (citing *Unicorn Tales*, 138 F.3d at 469–70).  The motion to dismiss Abraham Wolfson must therefore be denied, and Plaintiffs' cross motion to substitute is timely.

The motion to dismiss Plaintiff Dr. Victoria Blank is also denied.  Dr. Blank passed away on December 18, 2022, rendering Plaintiffs' motion to substitute the executor of her estate, Robert Blank, timely under Rule 25.  While Defendants claim a substitution would be untimely because Dr. Blank has been incompetent to sue for several years and Plaintiffs failed to adequately move to substitute, the 90-day limit that applies in the case of death does *not* apply when a plaintiff becomes incompetent during the action.  6 Moore's Federal Practice - Civil § 25.20 (2023) ("The 90-day limit that may apply to substitution motions based on death of a party [is] not applicable to

substitution motions based on incompetency."); *United States ex rel. Valdez v. Aveta, Inc.*, CIVIL 15-1140 (CCC), 2019 WL 13171054, at *2 (D.P.R. Mar. 1, 2019). Further, Plaintiffs dispute that Dr. Blank was incompetent, and Defendants' basis for alleging Dr. Blank's incompetence is (1) one admission during depositions that Dr. Blank suffered from dementia; and (2) a disputed offhand comment from a conference with the Court. Given the implications of declaring someone incompetent, the Court finds ruling Dr. Blank has been legally incompetent for "several years" inappropriate on such scant evidence. *Cf. Monahan v. Holmes*, 139 F. Supp. 2d 253, 258 (D. Conn. 2001) (quoting *Neilson v. Colgate–Palmolive Co.*, 199 F.3d 642, 651 (2d Cir.1999)) ("[A] litigant possesses liberty interests in avoiding the stigma of being found incompetent, and in retaining personal control over the litigation.").[15]

Nevertheless, the Court denies Plaintiffs' motions to substitute these two parties with leave to refile. Even though a formal suggestion of death is not necessarily required, *see Dolgow v. Anderson*, 45 F.R.D. 470, 471 (E.D.N.Y. 1968) (noting that a party need not file a statement of death before moving to substitute), Rule 25(a)(3) does mandate that "[a] motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3). The parties have identified representatives for the estates of both Defendant Abraham Wolfson and Plaintiff Dr. Victoria Blank—Shlomo Wolfson and Robert Blank, respectively. *See* ECF Nos. 449-1, 457. Neither is currently a party to this action, and Plaintiffs have not produced evidence that either representative has been served. Therefore, pursuant to Federal Rule of Civil Procedure 6(b), the Court allows a 30-day extension for Plaintiffs to produce proof of service and renew their motions to substitute

---

[15] Similarly, the Court declines to address Plaintiffs' allegations about the dementia of Defendant Isaac Dweck without a more complete record. Folkenflik Decl. ¶¶ 15, 16, ECF No. 449.

these two parties. If service is proper, the Court will grant the motions to substitute. *See Mandarino*, 257 F.R.D. at 396.

The Court now turns to the Entity Plaintiffs and holds that the 90-day deadline does not apply to the Entity Plaintiffs. *See Unison Realty Corp. v. RKO Theatres, Inc.*, 35 F.R.D. 232, 234 (S.D.N.Y. 1964) ("Rule 25(a) clearly refers to the death of a natural person and does not apply when a corporation dissolves."). The status of the dissolved Entity Plaintiffs is thus governed by Rule 25 analysis regarding transfers of interest. *See* Fed. R. Civ. P. 25(c). Plaintiffs allege that the interests of the entities were transferred to Plaintiffs Burgess and Fezzani in this case, making them candidates for substitution. However, substitution is unnecessary. Under Rule 25(c), in case of any transfer of interest, "the action may be continued by or against the original party[.]" Fed. R. Civ. P. 25(c). Because Rule 25 is procedural in nature, however, courts look to whether an underlying substantive statute allows for continuous jurisdiction in an action. As the Supreme Court has stated, "a time-honored feature of the corporate device is that a corporate entity may be utterly dead for most purposes, yet have enough life remaining to litigate its actions. All that is necessary is a statute so providing." *Def. Supplies Corp. v. Lawrence Warehouse Co.*, 336 U.S. 631, 634–35 (1949); *see also Eng v. Battery City Car & Limousine Serv., Inc.*, No. 00 CIV 1615 GEL, 2001 WL 1622262, at *7 (S.D.N.Y. Dec. 18, 2001).

Plaintiffs bring claims under New York common law. New York law allows for an entity to continue participating in pre-dissolution litigation after it is dissolved. N.Y. Bus. Corp. Law § 1006; *see In re Hartley*, 458 B.R. 145, 150 (Bankr. S.D.N.Y. 2011), *aff'd*, 479 B.R. 635 (S.D.N.Y. 2012) (quotations omitted) ("The dissolution of a corporation does not affect any remedy available to or against such corporation, its directors, officers or shareholders for any right of claim existing or any liability incurred before such dissolution . . . ."); *cf. New York State Workers' Comp. Bd. v.*

*21st Century Constr.*, 95 N.Y.S.3d 125 (N.Y. Sup. Ct. 2018) (applying section 1006 to a trust). Defendant's motion is thus denied as to the Entity Plaintiffs.

What then remains are the claims against Lester Blank and Adam Cung. In both cases, the Court finds dismissal is warranted. Rule 25(a) requires the substitution of natural persons if they pass away during litigation.[16] Generally, as previously discussed, these timely substitutions must occur within 90 days of the formal notice of death. Despite Defendants' argument to the contrary, there has been no formal notice of the death for either Plaintiff Blank or Plaintiff Cung.[17]

However, Defendants assert, and Plaintiffs do not dispute, that Plaintiff Blank died in 2007, and Plaintiff Cung in 2016. ECF Nos. 445, 449-2. Since that time, there has been significant litigation in this case, and Plaintiffs' counsel continued to represent individuals for whom the attorney client relationship was severed. *Navin v. Wells Fargo Bank, N.A.*, No. 3:15-CV-671 (MPS), 2017 WL 4401454, at *2 n.1 (D. Conn. Sept. 29, 2017) ("[A]ny attorney-client relationship that [Plaintiff's counsel] had with [Plaintiff] neither survived [Plaintiff's] death nor transferred to the estate."). The Court finds it troubling that Plaintiffs' counsel did not seek to substitute these deceased individuals at any time yet continued to pursue litigation in their names. *See Marentette v. City of Canandaigua, New York*, 799 F. App'x 48, 50 (2d Cir. 2020) (dismissing with prejudice where counsel pursued an appeal without substituting a deceased plaintiff).

---

[16] Plaintiffs argue that Rule 25(c) actually governs the deaths of these Plaintiffs and that the "interest" of these decedent passed automatically to their estates, requiring no substitution. Plaintiffs cite no case law for this proposition, and even if Rule 25(c) *does* apply to the deceased Plaintiffs, it does not erase Plaintiffs' obligations under Rule 25(a). *Cf. Unison Realty Corp.*, 35 F.R.D. at 234 (differentiating between natural persons and entities under Rule 25).

[17] This is in part Defendants' failure, as there is little dispute they had actual notice of the Plaintiffs' deaths as of 2017. Defs.' Am. MOL at 3–4, ECF No. 445. Defendants had the power to file a notice of death and should have done so before pursuing this motion. *See Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 470 (2d Cir. 1998) (noting that any party can provide formal notice of death).

The formal notice requirement of Rule 25(a) does not allow endless litigation in the name of deceased plaintiffs until *someone* provides formal notice; as discussed *supra*, the Rule allows parties flexibility to notify the Court and the opposing party in a practical and reasonable manner when a substitution is necessary, and to ensure dismissal does not occur when a party is not on notice of a litigant's death. *Unicorn Tales*, 138 F.3d 467, 469–70. Instead, disregarding the procedures of Rule 25, both parties completely failed to file any formal notice of death for 16 and then later 7 years, creating a time period of extensive litigation where Plaintiffs' counsel acted in the names of these dead Plaintiffs. "It is within this Court's discretion to deny a motion for substitution, and a long delay between a party's death and the motion justifies the denial." *Momin v. Quantierra Advisors LLC*, No. 22-1445, 2023 WL 2375765, at *2 (2d Cir. Mar. 7, 2023). Unquestionably, there has been an unacceptably long delay here. The Second Circuit recently dismissed a case where attorneys engaged in similar behavior for far shorter periods of time. *See id.* (dismissing where both parties failed to file formal notice of death for nine months and counsel pursued an appeal in the name of the deceased party). Therefore, the Court finds dismissal of Plaintiffs Adam Cung and Lester Blank with prejudice appropriate.

\* \* \*

The Court now takes a moment to note the snail's pace of this case in the past few years. Defendants have now received five rulings on motions regarding the same dispute from a bankruptcy that settled 20 years ago. Multiple parties to the litigation have simply passed away in the two decades this case remained pending. Discovery is now complete in this case. ECF Nos. 369, 430. The Court encourages the parties to focus on resolution—the actual purpose of pursuing litigation. The time has come for dispositive motions, or in the alternative, trial or settlement.

17

## CONCLUSION

For the foregoing reasons, Judge Cott's opinion on the motion to amend is **AFFIRMED**; the motion to supplement is **DENIED** as moot; the request for a certificate of appealability is **DENIED**; the motions to dismiss are **GRANTED** as to Lester Blank and Adam Cung, and **DENIED** as to Abraham Wolfson, Victoria Blank, the Bootlesville Trust, and the Cirenaca Foundation. The corresponding motions to substitute are **DENIED**, but without prejudice as to Abraham Wolfson and Victoria Blank. The Parties are ordered to confer and file a proposed briefing schedule for Defendants' motion for summary judgment within 21 days of the date of this Order. Plaintiffs are directed to effectuate service to Shlomo Wolfson and Robert Blank in a manner consistent with Rule 25 and this Order. The Clerk of Court is respectfully directed to close the motions at ECF Nos. 355, 384, 395, 400, 441, and 451.

Dated: New York, New York
    March 23 2023

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

18