UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MOHAMMED FEZZANI, *et al.*,                    :
                                               :
                       Plaintiffs,             :        99 Civ. 0793 (PAC)
                                               :
        -against-                              :        **OPINION & ORDER**
                                               :
BEAR, STEARNS & COMPANY INC., *et al.*,        :
                                               :
                       Defendants.             :
-------------------------------------------------------------X

        Twenty-four years into this litigation, Defendants[1] have moved for partial judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Specifically, Defendants

seek to dismiss the Plaintiffs' conspiracy claim against all Defendants.  Additionally, Plaintiffs[2]

move for reconsideration with respect to the dismissal of Adam Cung as a party.  For the reasons

set forth below, Defendants' Rule 12(c) motion is **GRANTED**; and Plaintiffs' motion for

reconsideration is **DENIED**.  Additionally, Plaintiffs are directed to serve a renewed motion to

substitute on non-parties Shlomo Wolfson and Robert Blank consistent with Federal Rule Civil of

Procedure 25(a)(3) within thirty days of this Order.

## BACKGROUND

**I.    Factual History**

        This case has an extensive history, so the Court only briefly reiterates the relevant facts,

construed in favor of Plaintiffs.  *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  This

---

[1] Defendants are Isaac R. Dweck, individually and as custodian for Nathan Dweck, Barbara
Dweck, Morris I. Dweck, Ralph I. Dweck, and Jack Dweck (collectively, the "Dweck
Defendants") and Aaron Wolfson and Morris Wolfson (collectively, the "Wolfson Defendants").
Defendant Abraham Wolfson is deceased, and substitution proceedings are ongoing.

[2] Plaintiffs are Mohammed Fezzani; Cirenaca Foundation; James Bailey; Jane Bailey; Baydel Ltd.;
Margaret Burgess; Patrick Burgess; and Bootlesville Trust.  Plaintiff Victoria Blank is deceased,
and substitution proceedings are ongoing.

case focuses on the practices of A.R. Baron ("Baron"), a now defunct broker dealer that perpetuated a scheme to defraud its customers out of millions of dollars. Am. Compl. ¶¶ 1, 56, ECF No. 239-1. Plaintiffs allege that Baron's scheme operated through brokers taking small, unknown companies with negligible profits and little overhead and then raising funds through an initial public offering ("IPO"). *Id.* ¶¶ 15–16. At the IPO, Baron would "cold call" potential customers and pressure them into investing. *Id.* ¶ 17. These companies had negligible profits, but Baron misrepresented their potential and hid negative information about the stocks. *Id.* ¶ 18. Baron thus created the quintessential "pump and dump" scheme, artificially inflating the prices of stocks and selling them before the prices crashed. *Id.* ¶ 14.

As part of this market manipulation, Baron would allegedly "park" stocks by executing trades with individuals who were actually insiders. *Id.* ¶ 19. Parking would involve placing stock in the investor's account while Baron retained the risk of loss by promising to buy back shares, if necessary, at a price that afforded the insider a guaranteed profit. *Fezzani v. Bear, Stearns & Co. Inc.* ("*Fezzani V*"), 716 F.3d 18, 21 (2d Cir. 2013). "Based on Baron's salespeople's false representations of trading volume and increasing stock prices inducing customers to buy, Baron and its co-conspirators would sell their holdings at a profit before the stock crashed." *Id.*

In brief, Plaintiffs allege that the remaining Defendants in this case—the Dweck Defendants and the Wolfson Defendants—provided their investment accounts to Baron for parking transactions to help facilitate the pump and dump scheme. *Id.* at 21–22; *Fezzani v. Bear, Stearns & Co. Inc.* ("*Fezzani VI*"), 527 F. App'x 89, 92 (2d Cir. 2013).

## II.   Procedural History[3]

### A.  Plaintiffs' Pleadings

Plaintiffs initially filed this action on February 2, 1999, alleging a series of securities and common law fraud claims against Bear Sterns, Baron, and numerous other actors.  Following a series of renewed Rule 12 motions, the Honorable Richard Conway Casey granted in part and denied in part Defendants' motions to dismiss.  *Fezzani v. Bear, Stearns & Co.* ("*Fezzani I*"), 384 F. Supp. 2d 618, 649 (S.D.N.Y. 2004), *on reconsideration in part*, No. 99 CIV. 0793 (RCC), 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004).  *Fezzani I* included dismissal of Plaintiffs' common law claims against the current Defendants.  *Id.* at 648.  On reconsideration, Judge Casey allowed Plaintiffs to replead common law claims against the Defendants, noting that "the plaintiffs *may* be able to state a claim for civil conspiracy."  *Fezzani v. Bear, Stearns & Co.* ("*Fezzani II*"), No. 99 Civ. 0793 (RCC), 2004 WL 1781148, at *4 (S.D.N.Y. Aug. 10, 2004).  Plaintiffs subsequently amended their complaint and added a claim for civil conspiracy against the Defendants.  *See* ECF No. 98; *Fezzani v. Bear, Stearns & Co.* ("*Fezzani III*"), No. 99 CIV. 0793 (RCC), 2005 WL 500377, at *1 (S.D.N.Y. Mar. 2, 2005).  On September 23, 2008, following the reassignment of this case to the undersigned, this Court granted in part Defendants' motion to dismiss Plaintiffs' Amended Complaint, including the common law claims against the current Defendants.  *Fezzani v. Bear, Stearns & Co. Inc.* ("*Fezzani IV*"), 592 F. Supp. 2d 410, 429–32 (S.D.N.Y. 2008), *aff'd in part, vacated in part*, 716 F.3d 18 (2d Cir. 2013), *and aff'd in part, vacated in part*, 527 F. App'x 89 (2d Cir. 2013).  In two separate orders, the Second Circuit affirmed in part and vacated in part this Court's dismissal.  *Fezzani V*, 716 F.3d at 25; *Fezzani VI*, 527 F. App'x at 93.  In relevant part, the

---

[3] Given the extensive procedural history of this case, the Court will only summarize the history relevant to the pending motions.

Second Circuit revived the common law claims against the current Defendants, namely, aiding and abetting fraud and civil conspiracy to commit fraud. *Fezzani V*, 716 F.3d at 25; *Fezzani VI*, 527 F. App'x at 93.

## B. Defendants' Motions to Dismiss Deceased Parties

On August 1, 2022, Defendants moved to dismiss the deceased defendant Abraham Wolfson from the case. ECF No. 395. Defendants later supplemented this motion on February 10, 2023, by moving to dismiss deceased Plaintiffs Victoria Blank, Lester Blank, and Adam Cung as well as dissolved Plaintiffs the Bootlesville Trust and Cirenaca Foundation (collectively, the "Entity Plaintiffs"). ECF No. 441. The Court denied the motion with respect to Abraham Wolfson, Victoria Blank, and the Entity Plaintiffs, but granted the motion with respect to Lester Blank and Adam Cung. *Fezzani v. Bear, Stearns & Co. Inc.* ("*Fezzani XX*"), No. 99 CIV. 0793 (PAC), 2023 WL 2612454, at *8 (S.D.N.Y. Mar. 23, 2023). In doing so the Court noted that "Plaintiff [Lester] Blank died in 2007, and Plaintiff Cung in 2016" and that "[s]ince that time, there has been significant litigation in this case, and Plaintiffs' counsel continued to represent individuals for whom the attorney client relationship was severed." *Id.* The Court thus found that Plaintiffs had acted inconsistently with the spirit of Rule 25(a) of the Federal Rules of Civil Procedure and that dismissal was warranted. *Id.* Plaintiffs now move for reconsideration of the Court's dismissal of Adam Cung. ECF Nos. 460–61.

## DISCUSSION

### I. Defendants' Rule 12(c) Motion is Granted

Pursuant to Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6)

4

motion to dismiss for failure to state a claim. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). The Court must accept all factual allegations in the Amended Complaint as true and draw all reasonable inferences in Plaintiffs' favor. "However, the Court is not required to credit mere conclusory statements or threadbare recitals of the elements of a cause of action." *Mariama Amar v. N.Y.C. Health & Hosps. Corp.*, No. 14 CIV. 2503 ER, 2015 WL 3754999, at *3 (S.D.N.Y. June 15, 2015) (quotations and citations omitted).

## A. Defendants Have Not Waived Their Right to Bring This Motion

Before the Court addresses the merits of the 12(c) motion, it must determine whether Defendants have waived their rights to bring this motion. Under Rule 12(h)(2) of the Federal Rules of Civil Procedure, a challenge to a plaintiff's failure to state a claim is not waived until the close of trial. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1392 (3d ed.). "There is no hard-and-fast time limit on a Rule 12(c) motion under Rule 12(h)(2)." *Am. Trucking Associations, Inc. v. New York State Thruway Auth.*, 238 F. Supp. 3d 527, 539 (S.D.N.Y. 2017), *aff'd*, 886 F.3d 238 (2d Cir. 2018). Defendants raised this motion before summary judgment practice and soon after the close of discovery, well within the permissible time period. Despite the length of this litigation, their motion is timely.

Plaintiffs maintain that Defendants' "serial piecemeal approach is improper, imposes unnecessary burdens on the Court, and unnecessary delay in resolving this case." Pls.' Opp. at 15, ECF No. 440. Indeed, the Court has previously denied another one of Defendants' motions in part based on waiver for failure to make a timely motion to amend their Answer. *See Fezzani XX*, 2023 WL 2612454, at *3–4.[4] But Defendants' litigious approach to this case does not foreclose them

---

[4] The Court previously found that Defendants waived certain arguments with respect to the assignment of rights in the bankruptcy proceedings. *Fezzani XX*, 2023 WL 2612454, at *3–4.

from making good faith, timely motions they have not waived. Defendants have never raised the claims they now assert—the duplicative nature of the civil conspiracy claim—and it is a narrow, predominantly legal issue. Further, Rule 12(c) permits a defendant move more than once to challenge the sufficiency of a claim, so Defendants' prior Rule 12 motions are irrelevant. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 n.2 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015) ("[I]t is generally permitted by Rule 12(h)(2) to bring successive motions challenging the sufficiency of a claim, the first under 12(b)(6) and the second, after the Answer has been filed, under Rule 12(c)."); *see also Valentine Props. Assocs., LP v. U.S. Dep't of Hous. & Urb. Dev.*, 785 F. Supp. 2d 357, 370 (S.D.N.Y. 2011), *aff'd*, 501 F. App'x 16 (2d Cir. 2012) ("Plaintiffs contend that Defendants waived their failure to state a claim arguments . . . by virtue of Defendants not presenting them in their prior Rule 12(b)(6) motion. However, it is permissible for Defendants to first raise such claims on a Rule 12(c) motion for judgment on the pleadings, as they have here."). That Defendant's Rule 12(c) motion was filed 24 years into the litigation and in the midst of several other motions does not automatically render the motion improper, particularly absent some other form of prejudice. Plaintiffs have not presented any other reasons why this argument should be deemed waived, and thus the Court proceeds to the merits.

### B. The Conspiracy Claim Should Be Dismissed

Defendants argue that the conspiracy claim is duplicative of the aiding and abetting claim and should therefore be dismissed. The Court agrees.

"It is a well-settled and often repeated principle of New York law that no cause of action lies for civil conspiracy." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 591 (2d

---

Defendants had filed multiple, conflicting motions on the issue and had failed to present all their arguments in a timely manner. *Id.*

Cir. 2005) (collecting cases).  When a plaintiff alleges conspiracy, it "is merely the string whereby the plaintiff seeks to tie together those who, acting in concert, may be held responsible in damages for any overt act or acts." *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) (quoting *Rutkin v. Reinfeld*, 229 F.2d 248, 252 (2d Cir. 1956)).

Because a claim of conspiracy is not its own separate cause of action,  a claim that "'offers no new allegations beyond those alleged in support of' other tort claims alleged elsewhere must 'be dismissed as duplicative.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, No. 12-CV-3723 (RJS), 2016 WL 5719749, at *7 (S.D.N.Y. Sept. 29, 2016) (quoting *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 315 (S.D.N.Y. 2013)).  In cases where plaintiffs' aiding and abetting claims overlap with their conspiracy claims, New York courts have allowed the aiding and abetting claims to proceed but have dismissed as duplicative the conspiracy claims. *Id.* at *8. Here, Plaintiffs seek to hold Defendants liable secondarily for Baron's fraud.  Plaintiffs do so under both their aiding and abetting claims and their conspiracy claims, asserting no fact-based distinction between the two claims.   The claims are therefore a paradigmatic example of a duplicative set of claims.  *See, e.g.*, *Carbon Investment Partners, LLC v. Bressler*, No. 20 CIV. 3617 (ER), 2021 WL 3913526, at *9 (S.D.N.Y. Sept. 1, 2021).

Plaintiffs argue to the contrary that, because "the [Amended Complaint] alleges numerous distinct acts in support of the conspiracy," the conspiracy claim is distinct from the aiding and abetting claim. Pls.' Opp. at 14.  This argument lacks merit.  The "facts" Plaintiffs allege in connection with the conspiracy that are separate from the aiding and abetting facts are "an explicit express agreement to join the conspiracy, and direct participation in the conspiracy." *Id.* Plaintiffs do no more than reiterate the elements of a conspiracy, which is insufficient to distinguish a civil conspiracy from an underlying tort under New York law. "Such a claim may lie . . . only if the

plaintiff alleges, 'in addition to conspiracy, independent overt acts undertaken in pursuit of that conspiracy.'" *Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99 CIV. 9623 (RWS), 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 4, 2007) (quoting *Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 332 (Bankr. S.D.N.Y. 1999)), *aff'd sub nom. Briarpatch Ltd. LP v. Phoenix Pictures, Inc.*, 312 F. App'x 433 (2d Cir. 2009).

Plaintiffs attempt to recharacterize their Amended Complaint by distinguishing their allegations of "parking" from other activities Defendants took in connection with the "pump and dump" scheme. In reality, the Amended Complaint makes no distinction between the factual allegations underlying the aiding and abetting claim and the conspiracy claim. *See Durante Bros. & Sons v. Flushing Nat. Bank*, 755 F.2d 239, 251 (2d Cir. 1985) (affirming a directed verdict where "[c]ount 7 [alleging conspiracy] added no new allegations to those of counts 1–6 except to reiterate that [the defendants] had conspired to commit the acts heretofore described").

Count 5 of the Amended Complaint alleging conspiracy states "Defendants entered into a contract, combination or conspiracy with the intent and purpose of committing the unlawful acts described [in the complaint.]" Am. Compl. ¶ 352. Count 6 alleging aiding and abetting likewise states "with knowledge of the fraud being perpetuated by Baron and the Baron Defendants . . . the Defendants provided substantial assistance to Baron [and certain employees]." *Id.* ¶ 356. There is no meaningful difference between these factual allegations; both seek to hold the Dweck Defendants and the Wolfson Defendants secondarily liable for Baron's fraudulent "pump and dump" scheme. *See In re Platinum-Beechwood Litig.*, No. 18-CV-10936 (JSR), 2020 WL 1932601, at *12 (S.D.N.Y. Apr. 21, 2020) ("Here, the civil conspiracy claim, just like the aiding and abetting claims, seeks to hold Bodner secondarily liable for the underlying tort . . . and the allegations of the Sixteenth Count are essentially identical to those set forth in the aiding and

abetting claims."). The claims are thus duplicative, and the conspiracy claim under Count 5 must be dismissed.

## II.     Motion for Reconsideration

The Court now addresses Plaintiff's motion for reconsideration.  Plaintiffs move for reconsideration of the Court's dismissal of Adam Cung for failure to timely substitute, citing (1) the lack of prejudice to Defendants if Plaintiff Cung continues in the case; (2) the applicability of Rule 25(c) of the Federal Rules of Civil Procedure; and (3) the Court's prior knowledge of Plaintiff Cung's death.   None of these arguments are appropriate grounds to grant Plaintiffs' motion.

"Motions for reconsideration are governed by Local Rule 6.3 and are committed to the sound discretion of the district court." *In re Molycorp, Inc. Secs. Litig.*, 13 Civ. 5697 (PAC), 2016 WL 3002424, at *2 (S.D.N.Y. May 23, 2016) (quoting *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 383, 387 (S.D.N.Y. 2011)). "Reconsideration of a court's prior decision is 'limited' by the doctrine of the law of the case: 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.'" *Matter of Bouchard Transp. Co.*, 14 Civ. 1262 (PAC), 2015 WL 13657786, at *1 (S.D.N.Y. Jan. 8, 2015) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003)).

The party moving for reconsideration must "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSK Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also In re JPMorgan Chase & Co. Deriv. Litig.*, No. 12 Civ. 03878 (GBD), 2014 WL 3778181, at *1 (S.D.N.Y. July 30, 2014).  The court will not redo its ruling "unless there is 'an intervening

change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" *Official Comm. of Unsecured Creditors*, 322 F.3d at 167 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Plaintiffs do little more than attempt to relitigate the prior motion by adding new arguments and attempting to distinguish the cases on which the Court relied. But "[a] motion for reconsideration should not relitigate issues already resolved by the court and should not be used to put forward additional arguments which the movant could have made, but neglected to make before judgment." *Goldstein v. State of New York*, No. 00 CIV. 7463 (LTS), 2001 WL 893867, at *1 (S.D.N.Y. Aug. 7, 2001) (quotations omitted), *aff'd*, 34 F. App'x 17 (2d Cir. 2002). Plaintiffs cite no overlooked controlling law, no new evidence, and no clear error that would warrant reconsideration. They simply ask the Court to reconsider its discretionary decision to dismiss Plaintiff Cung; the Court declines to do so. The motion for reconsideration is therefore **DENIED**.

## III.    Plaintiffs' Renewed Motion to Substitute

The Court briefly addresses an outstanding issue from its last opinion in this case. *See Fezzani XX*, 2023 WL 2612454, at *7. In *Fezzani XX*, the Court denied Plaintiffs' motions to substitute Abraham Wolfson and Victoria Blank without prejudice, noting

> [e]ven though a formal suggestion of death is not necessarily required, Rule 25(a)(3) does mandate that "[a] motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3). The parties have identified representatives for the estates of both Defendant Abraham Wolfson and Plaintiff Dr. Victoria Blank— Shlomo Wolfson and Robert Blank, respectively. Neither is currently a party to this action, and Plaintiffs have not produced evidence that either representative has been served. Therefore, pursuant to Federal Rule of Civil Procedure 6(b), the Court allows a 30-day extension for Plaintiffs to produce proof of service and renew their motions to substitute these two parties. If service is proper, the Court will grant the motions to substitute.

*Id.* at *7 (citations omitted). On April 22, 2023, Plaintiffs filed a declaration in support of their

prior motion to substitute Abraham Wolfson.  The Declaration states that

> [o]n April 12, 2023, [Plaintiffs' counsel] served on Richard Kirby, counsel for the
> Wolfson Defendants, Plaintiffs' Notice of Motion and Supporting Papers for the
> Motion for Substitution of Shlomo Wolfson and Robert Blank. Prior to that time,
> Mr. Kirby had confirmed he was authorized to and agreed to accept service by email
> on behalf of Shlomo Wolfson.

Folkenflik Decl. ¶ 2, ECF No. 464.  This Declaration is insufficient evidence that service

was proper.  "A motion to substitute, together with a notice of hearing, must be served on the

parties as provided in Rule 5 and on nonparties as provided in Rule 4." Fed. R. Civ. P. 25(a)(3).

Shlomo Wolfson is a non-party in this case, and therefore must be served in accordance with

Federal Rule of Civil Procedure 4.  "While Rule 5 authorizes various methods of service, including

service upon the party's attorney, Rule 4 of the Federal Rules of Civil Procedure requires personal

service through either delivery directly to the nonparty or its authorized agent, delivery to someone

of suitable age at the nonparty's dwelling or by serving the nonparty in accordance with the

relevant state law for serving a summons." *Macon v. Corr. Med. Care, Inc.*, No. 12-CV-6150G,

2015 WL 4604018, at *2 (W.D.N.Y. July 30, 2015).[5]

Generally, "service of process on an attorney not authorized to accept service for his client

is ineffective." *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1094 (2d Cir. 1990).  "[A]n

attorney's claim that he is authorized to receive process is not by itself sufficient; there must be

some evidence that the client intended to grant such authority." *Macon*, 2015 WL 4604018, at *3

(quoting *Jing v. Angel Tips, Inc.*, 2013 WL 950585, at *3 n.1 (E.D.N.Y.2013)).  Plaintiffs present

---

[5] "New York law authorizes various ways to effect service of a summons, including (1) personal
delivery; (2) delivery to a person of suitable age at an individual's dwelling or place of business;
(3) delivery to a designated agent; (4) affixing the summons to the door of the dwelling or business
place of the individual and mailing the summons to the individual's last known residence; (5) other
means as ordered by the Court; or (6) mail with a returned acknowledgement of receipt." *Macon
v. Corr. Med. Care, Inc.*, No. 12-CV-6150G, 2015 WL 4604018, at *2 (W.D.N.Y. July 30, 2015)
(N.Y. C.P.L.R. §§ 308, 312–a).

no proof of this authorization other than the word of Defendants' counsel.  This is insufficient to establish that Shlomo Wolfson—who is not yet a party to this case—intended to authorize Defendants' counsel to accept service on his behalf because "an agent's authority to act cannot be established solely from the agent's actions; the authority must be established by an act of the principal." *Dorrough v. Harbor Sec., LLC.*, No. 99 CV 7589(ILG), 2002 WL 1467745, at *4 n.6 (E.D.N.Y. May 10, 2002) (quotations and alterations omitted); *see also Thuman v. Dembski*, No. 13-CV-01087A(F), 2023 WL 369957, at *1 (W.D.N.Y. Jan. 24, 2023) (finding service improper where there was no written statement from a non-party authorizing an agent to accept service). Therefore, Plaintiffs have not properly served Shlomo Wolfson as the representative of Abraham Wolfson's Estate.

With respect to Robert Blank, Plaintiffs do not even attempt to provide proof of service. The Court reminds Plaintiffs that Robert Blank has neither appeared as a party nor formally retained counsel.  *See Navin v. Wells Fargo Bank, N.A.*, No. 3:15-CV-671 (MPS), 2017 WL 4401454, at *2 n.1 (D. Conn. Sept. 29, 2017) ("[A]ny attorney-client relationship that [Plaintiff's counsel] had with [Plaintiff] neither survived [Plaintiff's] death nor transferred to the estate."). He must therefore also be served pursuant to Rule 25(a)(3).

The Court is mindful of the "very technical nature of the deficiencies in service" and of Defendants' lack of objection to these deficiencies.  *Olympus Corp. v. Dealer Sales & Serv., Inc.*, 107 F.R.D. 300, 306 (E.D.N.Y. 1985).  But the Court cannot establish personal jurisdiction over nonparties until they have been properly served as a parties to this litigation.  *See Bruccoleri v. Gangemi*, No. 17-CV-7443, 2019 WL 499769, at *6 (E.D.N.Y. Feb. 8, 2019).  Therefore, the Court denies the motion to substitute without prejudice pending evidence that both Shlomo Wolfson and Robert Blank have been properly served pursuant to the procedures clearly articulated in Federal

Rules of Civil Procedure 4 and 25(a)(3).  The Court allows 30 days to correct the deficient service.[6]

## IV.    Upcoming Summary Judgment Motion

The parties requested that the Court resolve these motions before proceeding to summary judgment practice.  The Court has now done so, and therefore reiterates its previous scheduling order.  *See* ECF No. 465.  Thus, Defendants' motion for summary judgment and accompanying memorandum is due 45 days from the date of this Order;  Plaintiffs' opposition is due 45 days after Defendants' motion; Defendants' reply is due 21 days after Plaintiffs' opposition.

## CONCLUSION

Defendants' motion for partial judgment on the pleadings pursuant to Rule 12(c) is **GRANTED** and the conspiracy claim brought under Count 5 is **DISMISSED**.  Plaintiffs' motion for reconsideration is **DENIED**.  Additionally, to the extent it has been renewed, the Court **DENIES** without prejudice Plaintiffs' motion to substitute Abraham Wolfson and Dr. Victoria Blank.  The Court further directs Plaintiffs to provide proof of service to Shlomo Wolfson and Robert Blank within 30 days of this Order.  Defendants' motion for summary judgment and accompanying memorandum is due 45 days from the date of this Order;  Plaintiffs' opposition is due 45 days after Defendants' motion; Defendants' reply is due 21 days after Plaintiffs' opposition.  The Clerk of the Court is directed to terminate the motions at ECF Nos. 435, 460, and 461.

Dated:  New York, New York
        July 1, 2023

SO ORDERED

HONORABLE PAUL A. CROTTY
United States District Judge

---

[6] The Court determines that a new motion to cure this procedural defect within 30 days remains timely, despite the 90 day limit to make the motion articulated in Rule 25(a).  "As a statement noting death has not yet been served, the 90–day time period to file and serve a motion for substitution at a later time has not yet begun to run." *Crichlow v. Fischer*, No. 12-CV-7774 NSR, 2015 WL 678725, at *5 (S.D.N.Y. Feb. 17, 2015).